172 N.J. Super. 85 (1980)
410 A.2d 1180
ANTHONY D'ANNUNZIO AND MARION D'ANNUNZIO, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
BOROUGH OF WILDWOOD CREST, A MUNICIPAL CORPORATION, AND BEN ROY, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS AND THIRD-PARTY PLAINTIFFS, APPELLANTS,
v.
AMERICAN RESEARCH CORPORATION, SHALCO CHEMICAL CORPORATION AND ANIMAL REPELLENTS, INC., THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1979.
Decided January 16, 1980.
*86 Before Judges BISCHOFF, BOTTER and DWYER.
Mary J. Maudsley argued the cause for appellants (Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, attorneys; Mary J. Maudsley on the brief; Lewis B. April, of counsel).
Thomas J. Vesper argued the cause for respondents (Valore, McAllister, Aron & Westmoreland, attorneys).
The opinion of the court was delivered by DWYER, J.A.D.
*87 Borough of Wildwood Crest, a municipal corporation organized under the laws of the State of New Jersey and Ben Roy employed as dog warden by the borough appeal from the denial of summary judgment as to all but the fifth count of plaintiff's six-count complaint. The first three counts alleged negligence and other grounds for liability of the borough and Roy. The fourth count incorporated the first three and sought contribution. The fifth count sought indemnification. Since plaintiffs were liable under N.J.S.A. 4:19-16, the trial judge granted defendants' motion on this count. The sixth count repeated the first five and sought to hold defendants jointly liable.
The third-party defendants did not make any motions which are involved on this appeal.
The facts related to jurisdiction and procedural matters are not disputed. The facts related to liability are disputed but there is no need to resolve the factual disputes to determine the narrow question posed by this appeal. The question is: Does the ban in N.J.S.A. 59:9 2(e) prohibiting an insurer from bringing suit against a public entity or public employee under a subrogation provision in an insurance contract bar an insurer which has settled the claim of a third party from bringing an action for contribution under N.J.S.A. 59:9 3 on its claim that the public entity and/or public employee is a joint tortfeasor with its named insured?
Plaintiffs own a summer home in the borough. They reside in Delaware County, Pennsylvania. They own a German Shepherd named Martin. On August 10, 1974 plaintiffs were at their home in the borough with their dog.
Under circumstances which are disputed, Roy was near or on plaintiffs' property in the borough and allegedly used a chemical dog repellant to repress Martin.
Later that day Anita Ferguson, an infant, visited plaintiffs' home. Martin attacked her and bit her face.
*88 Anita Ferguson, by her guardian and her parents, who are residents of Pennsylvania, instituted suit against plaintiffs herein in the courts of Delaware County, Pennsylvania. At oral argument counsel for plaintiffs represented that before the Pennsylvania action was settled, this suit was commenced. The insurance carrier for plaintiffs' homeowners' policy settled the Pennsylvania action by paying its policy limit of $50,000. The settlement was approved by the Pennsylvania court after a hearing but without any finding of fault.
The borough's counsel asserts that this action must be considered realistically as a suit by plaintiffs' insurance carrier and as one under the subrogation clause of its policy since it will keep whatever recovery there is in this matter, and therefore the provisions of N.J.S.A. 59:9 2(e) bar this action. The statute reads:
If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee.
This statute has been construed to bar an action where an insurance company has paid its named insured the amount of a loss and then sought to recover that entire amount from a public entity. S.E.W. Friel Co. v. New Jersey Turnpike Auth., 73 N.J. 107, 113 (1977). There the insurance carrier for the named plaintiff sought to assert a claim for the amount it paid to the insured for damages to the insured's vehicle and cargo. The Supreme Court affirmed the dismissal of those claims.
The claim asserted by the insurance carrier in S.E.W. Friel Co. v. New Jersey Turnpike Auth., supra, was similar in nature to the claims asserted by the insurance carriers in A. & B. Auto Stores of Jones St., Inc. v. Newark, 59 N.J. 5 (1971). In A. & B. Auto Stores, the insurance carriers sought to recover the *89 amounts which they had paid on insurance policies to their named insureds for property damaged or lost in the Newark riots. The Supreme Court explained:
Subrogation is an equitable doctrine to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it. Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171 (1954); Brewster & Son v. Catalytic Construction Co., 17 N.J. 20, 28 (1954). When, as here, an insurance carrier which has satisfied a loss it was paid to cover, seeks to recoup by asserting a claim its insured has against another with respect to that loss, the final question must be whether justice would be furthered by that course. [at 23]
The Supreme Court held that it would be inequitable to permit the insurance carriers to enforce claims based on subrogation against the City of Newark because its liability was predicated upon a statute which did not require any showing of fault on Newark's part and thus made Newark an involuntary unpaid surety.
Counsel for plaintiffs argues that the insurance carrier here is not seeking to recover that portion of the settlement for which it was paid to take the risk, i.e., the liability of plaintiffs, but is seeking to recover that portion of the damages paid due to the fault of the borough and/or Roy.
Amounts paid by, or recoverable from, a joint tortfeasor are not subtracted from an award to a claimant against a public entity or public employee under N.J.S.A. 59:9 2(e). They are expressly excluded. Such amounts are due from a third-party stranger whose conduct in conjunction with that of the public entity or public employee results in a finding of joint liability. The amounts paid to a claimant from a policy of insurance or other source "other than a joint tortfeasor" are subtracted from an award against a public entity or public employee. Id.
The comments in the Report of the Attorney General's Task Force on Sovereign Immunity (May 1972) for the section of the draft legislation which as enacted became N.J.S.A. 59:9 2(e) stated:

*90 The intent of subparagraph (e) is to prohibit the receipt of duplicate benefits by a claimant filing suit under the act. The phrase "any other source" is not intended to include a joint tortfeasor under the Joint Tortfeasors Contribution Law, N.J.S. 2A:53-1 et seq. Problems surrounding the applicability of that statute to situations where a public entity is a joint tortfeasor are dealt with in section 59:9-3 of this act. [at 234 235]
In Markey v. Skog, 129 N.J. Super. 192 (Law Div. 1974), the court held that a defendant in an automobile negligence action had a right to file a third-party complaint for contribution against the State under the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53-1 et seq., even though plaintiff had not made a timely direct claim against the State under the New Jersey Tort Claims Act, N.J.S.A. 59:1 1 et seq.
The court explained the nature of a claim for contribution in the following language:
The adoption by the Legislature in 1952 of the Joint Tortfeasors Contribution Law obviously proceeded from its intention to alleviate the evident harshness and inequity of the common-law rule then obtaining in this State pursuant to which there was no right of joint tortfeasors to seek allocation among themselves of the burden of their fault. Under the common-law rule plaintiff was not only free to determine which among joint tortfeasors, if less than all, he chose to sue but was also free to determine which of them, if he obtained judgment against more than one, he would charge with the burden of satisfying the judgment and, if more than one, in what proportion. The right of contribution which is afforded by the 1952 act constitutes a recognition of the equitable doctrine that a "tortfeasor who satisfies the judgment is entitled to be put on the same footing with those who are equally liable for the wrong remedied by the judgment." Kennedy v. Camp, 14 N.J. 390, 398 (1954). The public-policy basis of the contribution doctrine was further articulated by Justice Heher in Kennedy as follows:
Apart from its foundation in the "clearest principles of natural justice", the doctrine "has an equal foundation in morals; since no one ought to profit by another man's loss; where he himself has incurred a like responsibility. Any other rule would put it in the power of the creditor to select his own victim; and, upon motives of mere caprice or favoritism, to make a common burden a most gross personal expression. It would be against equity for the creditor to exact or receive payment from one, and to permit, or by his [own] conduct to *91 cause, the other debtors to be exempt from payment." Story's Equity Jurisprudence (11th ed.) sections 492, 493. The gravamen of the action for contribution is the discharge of the joint tortfeasor's common liability for the common wrong, enforceable by action at the instance of the injured person.
See, also, Tino v. Stout, 49 N.J. 289, 295 297 (1967).
It is clear that a defendant's right to contribution from a joint tortfeasor is, therefore, an inchoate right which does not ripen into a cause of action until he has paid more than his pro rata portion of the judgment obtained against him by the plaintiff. It is at that point that his cause of action for contribution accrues. See McGlone v. Corbi, 59 N.J. 86, 94-95 (1971). The assertion by codefendants in a negligence action of a right of contribution inter sese and the right of a defendant to implead a joint tortfeasor by a third-party complaint before plaintiff's cause of action has been reduced to a judgment are merely devices of procedural convenience afforded by the rules of practice. See R. 4:7-5 and R. 4:8-1. Thus, although a defendant is not necessarily bound to proceed against joint tortfeasors in the same action in which plaintiff seeks to establish his (defendant's) liability, he ordinarily will, nevertheless, do so because a single action is the most orderly and logical manner in which proof of common liability can be established  and it is, of course, common liability which is the substantive basis of the right of contribution. [Markey v. Skog, supra, 129 N.J. Super. at 199-200]
The judge deciding Cancel v. Watson, 131 N.J. Super. 320, 323 (Law Div. 1974), and Kingan v. Hurston, 139 N.J. Super. 383, 384 (Law Div. 1976), declined to follow Markey v. Skog, supra, and held that a defendant in a tort action may not file a third-party action against a governmental agency for indemnification and contribution where the plaintiff had not filed timely notice under N.J.S.A. 59:8 8 and had not sued the governmental agency as a direct defendant.
Although this issue has not been raised on this appeal, the result we reach is consistent with Markey v. Skog, supra, and a like holding in Dambro v. Union Cty. Park Comm'n, 130 N.J. Super. 450, 458 (Law Div. 1974). Thus, the holdings of Cancel and *92 Kingan are disapproved. We note, further, that before the adoption of the New Jersey Tort Claims Act a municipality would have been liable for the negligent acts of its employees regardless of rank, McAndrew v. Mularchuk, 33 N.J. 172, 190 196 (1960), and an employee, such as Roy in this case, was not immune from suit.
In N.J.S.A. 59:9 3 the Legislature recognized that a public entity or public employee could be held liable as a joint tortfeasor and expressly set forth the consequences and limitations of such a result.
We conclude that the Legislature, by the provisions of N.J.S.A. 59:9-2(e), did not intend to ban claims for contribution, and hence the ban on suits by insurance carriers and others based on subrogation does not apply to claims for contribution by them as tortfeasors against joint tortfeasors.
If the ban against insurance carriers or others in N.J.S.A. 59:9-2(e) were construed to apply to claims for contribution, we believe it would unnecessarily interfere with settlements that would otherwise promptly provide an injured party with funds for medical treatment and other losses. The insurance carriers would be placed in a position in which they would not settle until the public entity or public employee were found to be a joint tortfeasor and liability apportioned. Such a result would be contrary to the legislative purpose of granting compensation within the limitations of the act to those who are injured.
Accordingly, we affirm the order denying the motion for summary judgment as to the counts other than the fifth count.
We remand this matter to the Law Division for proceedings consistent with this opinion. We do not retain jurisdiction.