ANGELO P. BERRETTA AND RITA BERRETTA, HIS WIFE, PLAINTIFFS, v. BRUCE CANNON, DEFENDANT/THIRD PARTY PLAINTIFF, v. CITY OF WILDWOOD WATER DEPARTMENT, THIRD PARTY DEFENDANT.

Superior Court of New Jersey
Law Division Special Civil Part
Cape May County

Decided May 6, 1987.

*David S. DeWeese,* for plaintiffs (*Cafiero & Balliette and Balliette,* attorneys).

*J. Philip Kirchner,* for defendant/third party plaintiff (*Kenney & Kearney,* attorneys).

*James P. Savio* for third party defendant (*Gormley, Savio, Reynolds & Drake,* attorneys).

## OPINION

CALLINAN, J.S.C.

This matter before the court once again raises the troublesome question of the effect of *N.J.S.A.* 59:8–8 on third party practice as it pertains to public entities.

Plaintiffs own a duplex property located at 2405 Central Avenue in the City of North Wildwood, which they use on a seasonal basis occupying it in the summer and leaving it unoccupied in the winter. Before vacating the property for the winter, it is plaintiffs' practice to drain the water from the system to prevent the pipes in the house from freezing. Then, they disconnect the pipes and shut off the water at the main. Defendant Bruce Cannon is alleged to have negligently turned on plaintiffs' water supply, mistaking the plaintiffs' water service for that of the adjoining property, thus causing the plaintiffs damages.

The defendant asserts in his answer and third party complaint that his parents are the owners of 2403 Central Avenue, North Wildwood. He claims that his father was gravely ill in the winter of 1984 and that it fell upon him to complete the task of winterizing his father's property. Not being familiar with either the proper procedure or the location of the water main, the defendant contacted the third party defendant, City of North Wildwood Water Department, and arranged for a representative of the water department to meet him on the site in the winter of 1984. When the representative arrived, Mr. Cannon requested an identification of the proper water service and a demonstration of the proper shut off procedure. The representative of the City then identified the plaintiffs' water service as that of Mr. Cannon's parents and proceeded to turn the water supply off.

Mr. Cannon then assumed that the water supply to his parents' property had been shut off, when in fact it remained on all winter, allegedly causing damage to his parents' property.

Moreover, on or about March 31, 1985, when he returned to the property and again manipulated the valve that had been identified to him as being that which controlled the water service to his parents' property, he proceeded to turn on the water service to plaintiffs' property causing plaintiffs damage. Plaintiffs sue only the defendant. The defendant answered and filed a third party complaint for contribution and indemnification against the City of Wildwood Water Department.

The defendant City of Wildwood Water Department moves now for dismissal of the complaint, claiming that third party plaintiff was obliged to give notice and to await six months, pursuant to *N.J.S.A.* 59:8–8, before bringing this complaint.

The city relies on *Ezzi v. DeLaurentis*, 172 *N.J.Super.* 592 (Law Div.1980). *Ezzi* arose from a two car collision, wherein plaintiff motor vehicle operator charged defendant motor vehicle operator with negligent operation. Approximately one year later, the defendant sought and was granted leave to join the municipality as a third party defendant. No notice was given to the municipality, nor was there compliance with the waiting period provided for in the New Jersey Tort Claims Act. *N.J.S.A.* 59:8–8. The third party defendant moved for summary judgment and the trial court granted the motion, reasoning that the Tort Claims Act is clear and unambiguous in the procedure to be followed in order to assert any and all claims. The court held that the public entity could not be proceeded against before compliance with the formal provisions of the Act. Recognizing the impracticality of such procedure, the court went on to say:

> A dismissal without prejudice unfortunately creates problems of its own. In the present setting the suit will presumably continue as between plaintiff and defendant and discovery will proceed over the next six months, despite the nonparticipation of a party in interest. Once the municipality is rejoined, it will not be bound by prior discovery and duplication may occur. At the very least, the main action will probably be delayed. On the other hand, these potential problems do not compel a conclusion that compliance with the statute in this setting serves no legislative purpose.

On similar facts, another trial court held otherwise. *Perello v. Woods*, 197 *N.J.Super.* 539 (Law Div.1984).

The problem emanates from the fact that it appears that the Legislature did not (or understandably could not) envision the various permutations possible in regard to the assertion of claims brought against governmental entities in the context of ongoing litigation. *N.J.S.A.* 59:8–8 provides in pertinent part that:

A claim relating to a cause of action for death or for injury to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of 6 month from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity if:

a. He failed to file his claim with the public entity within 30 days of accrual of his claim except as otherwise provided in section 59:8–9; or

b. Two years have elapsed since the accrual of the claim; ....

This statutory provision as it pertains to an aggrieved plaintiff is clear and does not permit dispute. The difficulty arises when a plaintiff, without claiming any wrongdoing on the part of a governmental agency or entity, sues a defendant who then asserts a right of contribution and/or indemnification from such a public entity.

Logically, there are four constructs to the statute as applied to such cases:

1. The claim against the City for contribution cannot be maintained, because the plaintiff did not make the City a direct party defendant and the statute does not provide for the exposure of governmental entities to "remote" causes of action.

*Cancel v. Watson*, 131 *N.J.Super.* 320 (Law Div.1974), interpreted *N.J.S.A.* 59:1–1 *et seq.* strictly and held that a public entity may not be joined as a third party, unless the party plaintiff has brought an affirmative claim against it. *Cancel* was expressly overruled by *D'Annunzio v. Wildwood Crest*, 172 *N.J.Super.* 85 (App.Div.1980).

2. The City may only be sued upon notice and compliance with the six month statutory waiting period, after defendant has paid more than their *pro rata* share of the judgment that plaintiff has obtained against defendant.

*N.J.S.A.* 59:8-1 seems to give support for this interpretation by providing that "accrual of (a) cause of action shall be defined in accordance with existing law." Technically, a defendant's cause of action for contribution "is an inchoate right which does not ripen into a cause of action until he has paid more than his *pro rata* portion of the judgment obtained against him by the plaintiff". *Markey v. Skog,* 129 *N.J.Super.* 192, 200 (Law Div.1974). *Markey,* nevertheless, permitted defendant to seek contribution from a third party defendant public entity in a case where the plaintiff's claim against that public entity was time-barred. This holding was based on the conclusion that the Legislature did not intend to abrogate the law governing the right of contribution. *Id.* at 203–04. In *Markey* the court further stated:

> The assertion by codefendants in a negligence action of a right of contribution *inter sese* and the right of a defendant to implead a joint tortfeasor by a third-party complaint before plaintiff's cause of action has been reduced to a judgment are merely devices of procedural convenience afforded by the rules of practice. See R. 4:7–5 and R. 4:8–1. Thus, although a defendant is not necessarily bound to proceed against joint tortfeasors in the same action in which plaintiff seeks to establish his (defendant's) liability, he ordinarily will, nevertheless, do so because a single action is the most orderly and logical manner in which proof of common liability can be established—and it is, of course, common liability which is the substantive basis of the right of contribution. [*Id.* at 200.]

3. The City may only be joined as a third party upon notice and compliance with the six-month waiting period. This was the holding in *Ezzi v. DeLaurentis.*

4. Normal principles of third party practice were not intended to be affected by the statute.

It is certainly not the function of the court to legislate but to, in appropriate cases, interpret legislation. *Matter of Sussex County Mun. Utilities Authority,* 198 *N.J.Super.* 214 (App. Div.1985).

The judicial goal in interpreting a statute is to effect legislative intent. *State v. Carlos*, 187 *N.J.Super.* 406 (App.Div.1982). As stated in *Matlack v. Burlington Cty. Bd. of Chosen Freeholders*, 194 *N.J.Super.* 359, 361 (App.Div.1984):

> Where drafters of statute or ordinance did not consider or contemplate a specific situation, a court should interpret the enactment consonant with the probable intent of draftsman had he anticipated the situation at hand....

The legislative declarations embodied in the comment to *N.J.S.A.* 59:8–3 are instructive:

> This section mandates that no suit shall be brought against a public entity unless a claimant has furnished the appropriate public entity with a notification of claim. The purpose of the claims notification requirement in this Chapter is two-fold: (a) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (b) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense.

If one adopts a view that the statute contemplated court mandated provisions governing third party actions, then such view is inconsistent with the stated purposes of the legislation. To be notified of exposure to liability long after the critical event is hardly compatible with the legislative desire to provide the governmental entity with an opportunity to investigate the incident. Further, to have damages fixed by a court or jury, which may be binding upon a municipal or governmental entity as *res judicata* without giving the governmental entity an opportunity to be heard, seems blatantly inconsistent with the objectives of the statute.

For tactical reasons, a defendant may deliberately want to keep the public entity from participating in the underlying litigation. Defendants may very well desire to keep what some might perceive as a "deep pockets" or "glamour" defendant out of the case until such time as damages are fixed by a jury. Only then will notice be given to the public entity. Without deciding this issue, giving such strategic latitude to joint tortfeasors seems unwise and certainly appears repugnant to the spirit and objectives of the statute.

Moreover, the investigation that is meaningful in a case, such as the one at bar, is the investigation of the alleged negligence on the part of the governmental agency as it relates to the claim of the plaintiff. As stated in *Perello*, "because liability of a public entity for contribution is related to its potential liability in tort to the plaintiff, investigation necessarily focuses on the events creating a cause of action in the plaintiff." *Perello*, 197 *N.J.Super.* at 546.

It is clear then that the purposes of the Act are best served by allowing the public entity an opportunity to be heard at the earliest possible moment and certainly before the parameters as to the extent of its monetary exposure is forever fixed. That basically is the philosophy behind third party practice. Third party practice procedures are meant to avoid multiplicity of actions and to prevent inconsistent factual resolutions.

The considerations embodied in the Court Rules providing procedures for third party practice apply with as much strength in third party claims for contribution as against public entities. *See Lameiro v. West New York Bd. of Ed.*, 136 *N.J.Super.* 585, 590, n. 1 (Law Div.1975); and *Speer v. Armstrong*, 168 *N.J.Super.* 251, 256 (App.Div.1979).

Third party practice is a creature of court rule. *R.* 4:8–1 *et seq.* The grant or denial of a motion to implead a third party defendant is a matter left to the sound discretion of the court. *Reinhardt v. Passaic-Clifton Nat. Bank*, 16 *N.J.Super.* 430 (App.Div.1951). The actions of the trial court in deciding such motions are subject to scrutiny by the appellate courts but generally are left undisturbed, unless the exercise of that discretion is clearly abused. *Salitan v. Magnus*, 28 *N.J.* 20, 26 (1958).

Third party practice is an effective tool to economize court time and to properly manage litigation. The provisions governing third party practice have been held to be procedural in nature and not substantive, thus bringing it within the rule making power of the Supreme Court by virtue of the Judicial

Article of the 1947 Constitution. *Sattelberger v. Telep,* 14 *N.J.* 353, 369–370 (1954). It is unreasonable to interpret *N.J.S.A.* 59:8–8 as an attempt on the part of the Legislature to limit the rule-making power of the court. *Winberry v. Salisbury,* 5 *N.J.* 240 (1950).

■ It seems far preferable to interpret *N.J.S.A.* 59:8–8 as not being intended to affect the court mandated rules of third party practice and to allow the public entity to be proceeded against by way of third party complaint. Upon motion, the public entity will be given the statutory time period to investigate this matter if they so desire and proceedings will be stayed. Thereafter even though this is a Special Civil Part matter, upon request by any party, the matter will be scheduled to come before the Early Settlement Program in place in this County. This approach would appear to best accommodate both the objectives of the New Jersey Tort Claims Act and the legitimate interests of judicial case management.

Defendant City of North Wildwood Water Company's motion for summary judgment, dismissing the complaint, is denied.