725 A.2d 1142 (1999)
319 N.J. Super. 452
S.P., Plaintiff-Appellant,
v.
COLLIER HIGH SCHOOL, Raymond Bock III, ABC Corporations 1-5, and John Does 1-5, Defendants-Respondents.
Collier High School and Raymond Bock III, Defendants/Third Party, Plaintiffs-Cross Appellants,
v.
Monroe Township Board of Education, Third-Party Defendant/Cross-Respondent, and
Township of Monroe and H.C., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted December 16, 1998.
Decided March 11, 1999.
*1144 Borrus, Goldin, Foley, Vignuolo, Hyman, Stahl & Clarkin, N. Brunswick, for plaintiff-appellant (Eileen M. Foley, on the brief).
Champi & Donington, for defendants-respondents/cross-appellants Collier High School and Raymond Bock III (John Scott Donington, Somerville, on the brief).
Leary, Bride, Tinker & Moran, Cedar Knolls, for third-party defendant/cross-respondent Monroe Township Board of Education (James D. Bride, of counsel; Arla D. Cahill, on the brief).
Before Judges STERN, LANDAU and WECKER.
*1143 The opinion of the court was delivered by STERN, P.J.A.D.
Following the entry of final judgment, plaintiff appeals from an order of September 15, 1995, denying her motion to file a late notice of claim under the Tort Claims Act against the Township of Monroe and its Board of Education. Plaintiff also appeals from an order of July 16, 1997, granting summary judgment to defendants Collier High School (Collier High) and its principal, Raymond Bock, III.
Defendants Collier High and Bock, as third party plaintiffs, cross appeal from the same order of July 16, 1997, dismissing their third party complaint. The cross-appeal "is made solely for the purpose of restoring the third party complaint in the event plaintiff's appeal is successful." The third party complaint was filed against the Township of Monroe, the Monroe Township Board of Education ("Board") and H.C. ("C.").[1] C. is alleged to have sexually harassed plaintiff on the school bus they mutually rode to and from Collier High, a private high school for children with special needs. Plaintiff was placed there by the Board which was responsible for the busing of plaintiff to and from school. The third party complaint sought "common law indemnification" and contribution from all three third party defendants and "contractual indemnification" from the Board and Township.

I.
Plaintiff endeavored to sue Monroe Township and the Monroe Township Board of Education as well as Collier High and Bock who, she claims, failed to "protect and care for" her while she was in their "custody." However, the Law Division declined to permit the late filing of the tort claim notice. The motion judge concluded that there were no "extraordinary circumstances" to warrant the late filing (more than ninety days after, but within a year of, plaintiff's eighteenth birthday). See N.J.S.A. 59:8-1, -8, -9. Vedutis v. Tesi, 135 N.J.Super. 337, 340-41, 343 A.2d 171 (Law Div.1975), aff'd o.b., Vedutis v. South Plainfield Bd. of Educ., 142 N.J.Super. 492, 362 A.2d 51 (App.Div.1976)); Rost v. Fair Lawn Bd. of Educ., 137 N.J.Super. 79, 347 A.2d 811 (App.Div.1975). Plaintiff challenges that order and the order which granted summary judgment to Collier High and Bock on the grounds that they owed "no duty" to plaintiff because she was on the school bus over which they had "no control." Plaintiff contends that "Collier and Bock had an obligation to notify plaintiff's parents of her allegations of criminal sexual contact and abuse on the school bus" and argues that "[t]he fact that the third party defendants were responsible for setting up the transportation of students to and from Collier, has no bearing upon the liability of Collier and Bock in failing to protect the plaintiff when she went to them for help." Under plaintiff's version, she went to Bock several times and he promised to do something about it, but took action which was inadequate and ineffective. Plaintiff alleges that because Bock's efforts were so inadequate and ineffective, the harassment became progressively worse. *1145 Under plaintiff's version, Bock, as an agent for Collier High, was advised of the facts and assumed the responsibility as principal to correct the problem. Plaintiff also contends that neither Collier High nor Bock is protected by charitable immunity which was an alternative basis for the grant of summary judgment.

A.
Collier High, which is located in Monmouth County, is an "alternative" high school that serves over forty school districts from several counties. Students are enrolled there upon referral by their local school district's child study teams.
The school is part of Collier Services, "a non-sectarian, not-for-profit, private agency sponsored by the Sisters of the Good Shepherd." Collier Services "qualifies as a non-profit entity organized exclusively for charitable, religious or educational purposes for tax exemption status and files IRS Form 990." Bock has been the principal of Collier High since 1987. As principal, Bock is primarily responsible for student behavior and "oversee [s] transportation issues."
Plaintiff, a Jamesburg resident, was enrolled in Collier High since 1992. At the time of her enrollment, plaintiff was a sophomore. Plaintiff was transported to and from the school by "a mini-bus" provided by the Monroe Township Board of Education. During plaintiff's junior year (1992-93), there were approximately five passengers on the bus, including plaintiff and C. The passengers did not have assigned seats. The bus had different drivers over the course of the school year. At the end of plaintiff's junior year, the bus was driven by Joseph Sabba, who continued to hold that position through plaintiff's senior year. During plaintiff's senior year (1993-94), there were six passengers who rode the bus, including plaintiff and C.
For purposes of summary judgment, we must accept the facts as alleged by plaintiff and give her the benefit of all inferences those facts support. Baird v. American Medical Optics, 155 N.J. 54, 58, 713 A.2d 1019 (1998).
Plaintiff testified that she first met C. at "the beginning of [her] junior year" (1992-93). By November or December, they "started talking ... as friends," although plaintiff denied that they "fool[ed] around... verbally." The friendship was limited to the time spent on the bus. They did not socialize or speak either in or out of school.
According to plaintiff, C. started making "rude comments, sexual comments" to her in early 1993. Initially, plaintiff responded by telling him either to "shut up" or to "stop" making the comments. However, when he did not do so, plaintiff would "say something back to him or ... hit him."
When C. began to make the remarks, plaintiff at first did "nothing" after she got off the bus. She simply hoped that it "wouldn't happen again." However, as the situation intensified and the comments continued, plaintiff went to Bock in February or March 1993 and informed him that C. "was bothering [her] and making rude ... and sexual comments" and that she wanted it to stop. Bock told plaintiff that "he would speak to" C. and that "it shouldn't happen again."
Although plaintiff did not know whether Bock, in fact, talked to C., the comments subsided for a few days. However, shortly thereafter C. not only resumed making the remarks but also began to "grab [plaintiff's] chest [and] genital area." Plaintiff continued to tell C. to stop. She also moved to other seats on the bus to get away from him, but he would "follow" her. By April 1993, C. was "grabbing [her] and putting [her] into sexual positions." Plaintiff admitted that she responded by hitting C. and calling him a "nig____" and "[b]lack piece of ____."
Plaintiff met with Bock again in either late April or early May of 1993. She told Bock that C. was still making the remarks, that he was grabbing her, and that she could neither defend herself nor "take it any more."[2] Bock said that he would meet with C. again *1146 "and that it should stop." Bock asked plaintiff if she wanted to attend the meeting, but plaintiff declined.
After the meeting with Bock, C.'s offensive behavior subsided for up to a week, but then resumed. Plaintiff told C. that she would go back to Bock if he did not stop. However, she never went back to Bock because the school year was almost over.
Plaintiff did not see C. during the summer. By either the end of September or early October of her senior year (1993-94), the comments and grabbing started again. After a few weeks, plaintiff had another meeting with Bock. During this meeting, an administrative assistant named Buchanan was called in. When Bock again asked plaintiff if she wanted to be present when he spoke to C., plaintiff said that she did.
C. was then called to the meeting. Bock told him that his behavior was "a criminal offense," that it would not be tolerated, and that he could be "kicked off the bus" if it continued. According to plaintiff, C. apologized and said nothing about plaintiff's behavior during the meeting.
Following the meeting, there was a period of good behavior. However, around Christmas time, a Collier High administrative assistant named Collins found plaintiff "crying" in the ladies room. Plaintiff told Ms. Collins "what was happening," and Collins took her to Bock. Consistent with the past practice, after plaintiff's meeting with Bock, C. stopped harassing her for a short time and then started up again after the Christmas break. Plaintiff met with Bock a few more times as the circumstances required, and Bock continued to warn that C. "could be kicked off the bus or C. could be suspended ... or kicked out of school."
Plaintiff did not tell her mother about these events until some time in her senior year. On May 24, 1994, plaintiff reported that she "was never going back" on the bus again. The next day, plaintiff's mother went to school with plaintiff and met with Bock. Plaintiff subsequently submitted a written request that she be permitted "to drive to school for the rest of the year." The request was ultimately denied by the Board.
At the May meeting, Bock "filled out a complaint" and told plaintiff that she should "press charges" against C. Plaintiff and her mother thereafter went to the police station and filed charges.
Bock also sent plaintiff to see her social worker "to get more information about it." Plaintiff informed the social worker, Lisa Nussbaum, about the situation. Plaintiff had not previously told Nussbaum about C.'s harassment because she had spoken to Bock about it and Bock said that "it was going to be taken care of."
Plaintiff graduated from Collier High in June 1994.
Bock recalled that plaintiff first complained to him about C. in November or December 1993, at the beginning of her senior year. The complaints focused on his "bothering her" and "calling her names." Bock did not consider the reports of C.'s action to constitute sexual harassment until May 1994 when plaintiff told him that C. "touched her breast." While plaintiff previously complained that C. was bothering her, she made no prior complaints that C.'s behavior was sexual in nature. Bock nevertheless met with C. following his meetings with plaintiff, and she was given the option of attending. C. told him that plaintiff was the aggressor, who hit him and called him a "nig____."[3] Nevertheless, C. promised Bock that he would leave plaintiff alone.
Bock talked to the bus driver about plaintiff's complaints. According to the bus driver, plaintiff was the instigator who approached C. Sometimes they appeared to argue; sometimes they appeared friendly. Bock did not call plaintiff's parents because he did not believe there was a "reason" to do so.
Bock described C. as "distractible" and said that he was "written up quite a bit" "for mischievous kind of behavior." School records documented that C. "touches the girls *1147 too much, ... much more than they want him to touch them."
Joseph Sabba, the bus driver, testified that, while he saw plaintiff approach C. and hit or slap him, he never saw C. get up from his seat and approach plaintiff. Sabba considered it "ordinary teenage horseplay." Sabba also stated, however, that he may not have heard what C. said prior to what he observed plaintiff do. He could not always see what was going on in the back of the bus while he was driving.
Bock wrote a "har[ ]assment report" after the May 1994 meeting with plaintiff and her mother. Thereafter, the Board's administrative assistant and affirmative action officer, Myra Bugbee, conducted an investigation. In her June 9, 1994 report, Ms. Bugbee noted that plaintiff and C. "have a relationship that swings from friendship to one that is also adversarial in nature" and concluded that "neither party is clearly at fault nor innocent in this situation." She made certain recommendations, but by then plaintiff was about to graduate.

II.
The motion for leave to file a late notice under the Tort Claims Act, N.J.S.A. 59:8-8, was dated August 22, 1995. A transcript of the argument on the motion reveals it was served on the Township Clerk and Board of Education on August 24, 1995.[4] Plaintiff had turned eighteen on September 7, 1994, and the application stated:
The delay in filing the late Notice of Tort Claim is excusable in that the defendants assured [S.P.] that they could handle the matter internally within the school system. Based upon the defendants' representations that they would handle the matter and also [S.P.]'s own youth and ignorance, a Notice of Tort Claim was not filed within a 90-day time period following [S.P.]'s 18th birthday. However, [S.P.] has always diligently pursued her rights and must be allowed to file a late Notice of Tort Claim against the defendants who refused and failed to protect her while she was a student under their custody and care.
Plaintiff also asserted that the Township and Board would suffer no prejudice because of the Board's investigation into her complaints.
The motion judge denied the application, stating:
I have to deal with what I've been noticed on and basically you don't give me any reason to grant this notice of late claim at this stage other than the fact she reached the age eighteen, she reached age eighteen last September and that she graduated from school in June and that she didn't come to you until she received a subpoena for the criminal case. And not knowing that she might have a claim against the town or not being aware of the need to file a late notice of claim is not a sufficient reason. You have to give me more. So I think I, under the statute my hands are tied. I have to deny your motion. I'll deny it without prejudice so that if you wish to refile the motion with specific reasons that fit the statute which would show extraordinary circumstances, obviously I would consider that.
Plaintiff never refiled the motion.
The Tort Claims Act prohibits a suit against a public entity unless the entity is given notice of the claim "not later than the ninetieth day after accrual of the cause of action." N.J.S.A. 59:8-8; see also N.J.S.A. 59:8-1 (defining "accrual"); N.J.S.A. 59:8-3; Rost v. Fair Lawn Bd. of Educ., supra; Vedutis v. Tesi, supra, 135 N.J.Super. at 340-41, 343 A.2d 171, regarding the rights of minors. "The purpose of the 90 day limit is to `compel a claimant to expose his intention and information early in the process in order to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh.'" O'Neill v. City of Newark, 304 N.J.Super. 543, 549, 701 A.2d 717 (App.Div.1997) (quoting Lutz v. Township of Gloucester, 153 N.J.Super. 461, 466, 380 A.2d 280 (App.Div.1977)); see also, *1148 e.g., Wood v. County of Burlington, 302 N.J.Super. 371, 375-76, 695 A.2d 377 (App. Div.1997). Failure to satisfy the ninety-day requirement constitutes a bar to recovery against the public entity unless the claimant is a minor or incompetent at the time the cause of action accrues in which case the matter is tolled. Here, the matter was tolled until plaintiff's eighteenth birthday on September 7, 1994. See N.J.S.A. 59:8-8; Rost v. Fair Lawn Bd. of Educ., supra; Vedutis v. Tesi, supra; Margolis and Novack, Claims Against Public Entities (Gann 1998), Comment to N.J.S.A. 59:8-8.
N.J.S.A. 59:8-9 grants the court discretion to permit a claimant, who failed to file a timely notice, leave to do so "at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." N.J.S.A. 59:8-9; Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 146, 543 A.2d 443 (1988) (trial court's decision on motion for leave to file a late notice of claim "will be sustained on appeal in the absence of a showing of an abuse [of discretion]"); O'Neill, supra, 304 N.J.Super. at 550, 701 A.2d 717. The statute sets forth the requirements of an application for leave to file a late notice:
Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter.

[N.J.S.A. 59:8-9 (emphasis added).][5]
Plaintiff clearly failed to meet the requirements of N.J.S.A. 59:8-9. She submitted no affidavit based upon personal knowledge that showed "sufficient reasons constituting extraordinary circumstances for [her] failure to file notice of claim within" ninety days of her eighteenth birthday. N.J.S.A. 59:8-9. She submitted only an affidavit of counsel, and the affidavit included no facts constituting "extraordinary circumstances" for plaintiff's failure to comply with the notice requirement. According to the affidavit, plaintiff's failure to file a notice within ninety days of her eighteenth birthday was due to defendants' assurances to plaintiff that "they could handle the matter internally within the school system," plaintiff's "youth," and plaintiff's "ignorance." Indeed, it appears that plaintiff did not even consider instituting an action against defendants until after she sought counsel in June 1995 as the result of having been subpoenaed in the criminal investigation arising out of the charges she filed against C.

N.J.S.A. 59:8-9 does not define "extraordinary circumstances," and "[w]hether such circumstances exist must therefore be determined by the courts on a case-by-case basis." Epstein v. State, 311 N.J.Super. 350, 359, 709 A.2d 1353 (App.Div.), certif. denied, 155 N.J. 589, 715 A.2d 992 (1998). And, as we recently observed in comparing a dismissal without prejudice when not obtaining an affidavit of merit in a malpractice action with the need for a showing of "extraordinary circumstances" to permit a late notice under the Tort Claims Act, "ignorance of the law or failure to seek legal advice will not excuse failure to meet the filing deadline" under N.J.S.A. 59:8-8. Hyman Zamft and Manard v. Cornell, 309 N.J.Super. 586, 593, 707 A.2d 1068 (App.Div.1998). Stated differently, ignorance of the ninety-day notice period "without more, does not constitute sufficient reason for [the] delay." O'Neill, supra, 304 N.J.Super. at 552, 701 A.2d 717. Cf. Blank v. City of Elizabeth, 318 N.J.Super. 106, 723 A..2d 75 (App.Div. 1999).
Nothing in the record before us suggests that, despite her learning disabilities, plaintiff was incompetent or psychologically or physically unable to file a timely notice. See O'Neill, supra, 304 N.J.Super. at 554, 701 A.2d 717; N.J.S.A. 59:8-8. In fact, nothing *1149 in the record expressly addresses the ninety-day period following plaintiff's eighteenth birthday. Moreover N.J.S.A. 59:8-8 tolls an action until an infant becomes eighteen. Contrary to plaintiff's counsel's suggestion, she is not entitled to more time merely because of her young age and inexperience. Moreover, under her version, plaintiff was aware of the facts giving rise to her claim since well before her eighteenth birthday.
Accordingly, we affirm the denial of the late filing of plaintiff's claim under Tort Claims Act.[6]

B.
Plaintiff contends that the Law Division erroneously granted summary judgment to Collier High and Bock because they did not owe her a duty of care with respect to events that took place on the bus over which Collier High and Bock had no control. Plaintiff argues, however, that her cause of action against the school and its principal is not limited to events that took place on the bus. Her claim also encompasses acts that took place at school when she reported C.'s behavior to Bock who, she claims, thereafter did nothing to protect her.
To the extent a legal issue is involved, the trial court's opinion is "not entitled to any special deference," Manalapan Realty, L.P. v. Township Committee of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). Summary judgment can be granted only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Insurance Company of America, 142 N.J. 520, 528-29, 666 A.2d 146 (1995).
"[W]hether a defendant owes a legal duty is generally a question of law for the court to decide," Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502, 694 A.2d 1017 (1997), and
In determining whether a duty is to be imposed, courts must engage in a rather complex analysis that weighs and balances several, related factors, including the nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interests of, and the relationships between or among, the parties, and, ultimately, based on considerations of public policy and fairness, the societal interest in the proposed solution.
[J.S. v. R.T.H., 155 N.J. 330, 337, 714 A.2d 924 (1998).]
"Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists." Ibid. Indeed, foreseeability is " `crucial' in determining whether a duty should be imposed." Id. at 338, 714 A.2d 924 (quoting Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc., 135 N.J. 182, 194, 638 A.2d 1288 (1994)). "Foreseeability ... is based on the defendant's knowledge of the risk of injury and is susceptible to objective analysis." Ibid. "That knowledge may be an actual awareness of risk." Ibid. In this case, assuming plaintiff's deposition testimony to be true, there is no question that after she reported the physical and sexual nature of C.'s behavior to Bock, he (and Collier High through him) had "actual awareness" of a risk of injury to her. Ibid. Thus, the harm was foreseeable by Collier High and Bock.
However, we must also consider " `whether the plaintiff's interests are entitled to legal protection against the defendant[s'] conduct.'" Ibid. (quoting Weinberg v. Dinger, 106 N.J. 469, 481, 524 A.2d 366 (1987)). In deciding whether plaintiff's interests are entitled to legal protection against Collier High and Bock, we must evaluate and balance the parties' "conflicting interests," assess defendants'" `responsibility for conditions creating the risk of harm,'" and analyze whether they "had sufficient control, opportunity, *1150 and ability to have avoided the risk of harm." Id. at 338-39, 714 A.2d 924.
In J.S. the Court held:
that when a spouse has actual knowledge or special reason to know of the likelihood of his or her spouse engaging in sexually abusive behavior against a particular person or persons, a spouse has a duty of care to take reasonable steps to prevent or warn of the harm. Further, we hold that a breach of such a duty constitutes a proximate cause of the resultant injury, the sexual abuse of the victim.

[Id. at 352, 714 A.2d 924.]
Like the strong State policy of protecting children from sexual abuse, the State also has a strong policy of protecting its citizens from sexual harassment. See, e.g., N.J.S.A. 10:5-3 (New Jersey Law Against Discrimination); Pukowsky v. Caruso, 312 N.J.Super. 171, 177, 711 A.2d 398 (App.Div.1998); Connolly v. Burger King Corp., 306 N.J.Super. 344, 348, 703 A.2d 941 (App.Div. 1997). It is true, as defendants argue, that Jackson v. Hankinson, 94 N.J.Super. 505, 229 A.2d 267 (App.Div.1967), aff'd, 51 N.J. 230, 235, 238 A.2d 685 (1968), held that a board of education which provides transportation to its students must take reasonable precautions for their safety and well-being while they are on the bus. However, the opinion does not preclude the imposition of a concomitant duty upon a high school and its principal, who have knowledge of potentially criminal or otherwise wrongful conduct taking place on the bus while en route to or from the school, to take steps to prevent injury to their students while on the bus. See Jackson, supra, 94 N.J.Super. at 511-13, 229 A.2d 267; see also Home State Ins. Co. v. Continental Ins. Co., 313 N.J.Super. 584, 713 A.2d 557 (App.Div.1998). This is particularly so in this case since Bock had assumed responsibility for resolving plaintiff's complaints at the time they were made. See Titus v. Lindberg, 49 N.J. 66, 74, 228 A. 2d 65 (1967). Because C. was enrolled in Collier High, defendants "had sufficient control, opportunity, and ability to have avoided the risk of harm," J.S., supra, 155 N.J. at 339, 714 A.2d 924, at least by informing the Board of what plaintiff had alleged. Thus, here "[t]he nature of the parties' interests" reflects "the need to recognize a duty of care" on the part of Collier High and Bock, id. at 343, 714 A.2d 924, and "[p]ublic policy considerations based in large measure on the comparative interests of the parties support overwhelmingly the recognition of a duty of care in these circumstances." Id. at 346-47, 714 A.2d 924.

C.
Plaintiff contends that the Law Division also committed reversible error when it ruled that charitable immunity precluded her action against Collier High and Bock. See N.J.S.A. 2A:53A-7. She argues that "Bock is not entitled to charitable immunity in that he is an individual." With respect to Collier High, a non-profit corporation or entity organization for education purposes, plaintiff contends that, because charitable immunity precludes only negligence actions, and does not "extend to actions brought for fraud, intentional conduct, recklessness, gross negligence or willful or wanton conduct," see Seiderman v. American Inst. for Mental Studies, 667 F.Supp. 154 (D.N.J.1987), her complaint was wrongly dismissed. According to plaintiff, her complaint alleges fraud, misrepresentations, recklessness and gross negligence, but we agree with the motion judge that there were "no proofs of willful or wanton conduct or gross negligence" by Bock on the record produced.
Plaintiff also claims that because C.'s conduct involved "sexual abuse," the immunity afforded by N.J.S.A. 2A:53A-7 does not apply. While we must accept plaintiff's allegations as true, the critical conduct addressed by the complaint as the basis for liability of these defendants is Bock's negligence, not C's sexual harassment. Moreover, the 1995 amendments to N.J.S.A. 2A:53A-7 granting employees and agents immunity, but excepting from that immunity liability for "a willful, wanton or grossly negligent act of commission or omission, including sexual assault and other crimes of a sexual nature," suggest the immunity for the charitable or non-profit organization itself is not lost. We, therefore, agree with the *1151 motion judge that the charitable immunity doctrine applies.
However, this cause of action accrued before July 24, 1995, and as of then employees of charitable institutions were not immune from suit. N.J.S.A. 2A:53A-7.[7] Accordingly, the motion judge erroneously dismissed the action against Bock. Ibid.

II.
In light of our reversal of the dismissal of the complaint against Bock, we must address Bock's protective cross-appeal from the order dismissing his third party complaint. Because of the reversal of summary judgment in his favor, we reverse the dismissal of his third party complaint, and in doing so, we have to consider an issue not specifically addressed by the parties,the impact of the Tort Claims Act notice requirement on a third party complaint against a public entity. Cf. Kimmel v. Dayrit, 154 N.J. 337, 712 A.2d 1129 (1998).
In Markey v. Skog, 129 N.J.Super. 192, 196-97, 322 A.2d 513 (Law Div.1974), an automobile negligence case, the defendant filed a third-party complaint seeking contribution from the State. The plaintiff neither made a direct claim against the State nor sought leave to amend the complaint to assert a direct claim against it. Id. at 197, 322 A.2d 513. The State's first notice of the defendant's third-party claim was the third-party complaint, which was "served upon [the State] some 11 months after the event." Ibid. By way of affirmative defense, the State asserted that the defendant's contribution claim was barred by the doctrine of sovereign immunity. Ibid. The State conceded that tort claims could be asserted against it but only if "such claims [were] processed, presented and proceeded upon in accordance with the strict procedural requirements of the [Tort Claims] act." Id. at 197-98, 322 A.2d 513. According to the State, "if a plaintiff fail[ed] to perfect his claim against the State by having failed to comply with the procedural requirements of the act, the State [was] not only not liable to the plaintiff but [was] also relieved of liability in respect of all consequences of its alleged negligence, including liability to a joint tortfeasor for contribution." Id. at 198, 322 A.2d 513. The State also argued that "if the primary claim is barred by the primary claimant's inaction during the 90-day period, the State is no longer liable to the primary claimant and, therefore, cannot be liable to any derivative claimant, including a joint tortfeasor." Ibid.
Judge Pressler, then a County Court judge temporarily assigned to the Law Division, rejected the State's position as misconceiving the "history, purpose and construction" of both the Joint Tortfeasors Contribution Law (Contribution Law), N.J.S.A. 2A:53A-1 et seq., and the Tort Claims Act. Id. at 199, 322 A.2d 513. She concluded that a plaintiff's failure to file timely notice was not a bar to a defendant's claim for contribution from a public entity and held that the defendant had the right to seek contribution from the State under the Joint Tortfeasors Contribution Law. Id. at 205, 322 A.2d 513.
Judge Pressler first observed that the purpose of the Contribution Law was "to alleviate the evident harshness and inequity of the common-law rule ... pursuant to which there was no right of joint tortfeasors to seek allocation among themselves of the burden of their fault." Id. at 199, 322 A.2d 513. She next observed that "a defendant's right to contribution ... is ... an inchoate right which does not ripen into a cause of action until he has paid more than his pro rata portion of the judgment obtained against him *1152 by the plaintiff." Id. at 200, 322 A.2d 513. Thus, "[i]t is at that point that his cause of action for contribution accrues." Ibid. (Emphasis added.)
The Markey opinion further observed that a defendant's right to file a third-party complaint seeking contribution from a joint tortfeasor before the plaintiff had obtained a judgment was merely a device of "procedural convenience afforded by the rules of practice." Ibid. Though a defendant was not required to proceed against joint tortfeasors in the same action at the time Markey was written, Judge Pressler noted that a defendant would ordinarily seek contribution in the same case because to do so was "the most orderly and logical manner." Ibid.[8] In addition, she pointed out that "common liability at the time of the accrual of plaintiff's cause of action ... is the sine qua non of defendant's contribution right." Id. at 200, 322 A.2d 513. Thus, if common liability existed at the time the plaintiff's cause of action accrued, the "defendant [could not] be deprived of his inchoate right by reason of plaintiff's loss thereafter of his own right of direct action against the joint tortfeasor." Id. at 200-01, 322 A.2d 513. Judge Pressler concluded: "Any other rule would not only be contrary to the conceptual basis of the cause of action for contribution but would also be contrary to the policy of the contribution statute, which seeks to prevent plaintiffs, by their unilateral actions, from electing where to place the burden of a common fault." Id. at 201, 322 A.2d 513. Moreover, though the Tort Claims Act was "silent with respect to any time limitations or other bar to the assertion of a contribution claim against the State," Judge Pressler believed that the Act clearly contemplated that the State could be liable as a joint tortfeasor given the monetary limitations imposed upon the State's contribution obligation. Id. at 202, 322 A.2d 513.[9]
Markey therefore rejected the State's argument that it had no liability "because of [defendants'] failure to have filed a 90-day notice," id. at 204, 322 A.2d 513, reasoning:
Common liability for contribution purposes is, as noted, determinable as of the date of the accrual of plaintiff's claim. That a plaintiff is barred from pursuing his cause of action after 90 daysand `barred' is the word used by N.J.S.A. 59:8-8does not mean he did not have the right to do so at the time his cause of action accrued. The subsequent loss of the remedy, therefore, as in the statute of limitations case, does not operate retroactively, for contribution purposes, to wipe out the right of action which existed before the bar to the remedy was raised by plaintiff's inaction. That is to say, the 90-day notice is not a condition precedent to the existence of liability on the part of the State. It is a condition only upon a plaintiff's right thereafter to pursue his remedy against the State.

[Ibid. (emphasis added).]
Finally, Judge Pressler noted that her conclusion was similar to cases from "the majority of jurisdictions which have considered this question in the context of governmental tort claims acts substantially similar to ours." Id. at 205, 322 A.2d 513.
Two Law Division decisions by another judge, decided subsequent to Markey, held that a defendant could not file a third-party contribution or indemnification action against a public entity because the plaintiff failed to present a claim against the public entity within the time prescribed by the Act and did not bring a direct action. Kingan v. Hurston, 139 N.J.Super. 383, 354 A.2d 109 (Law *1153 Div.1976); Cancel v. Watson, 131 N.J.Super. 320, 329 A.2d 596 (Law Div.1974). However, in D'Annunzio v. Wildwood Crest, 172 N.J.Super. 85, 91-92, 410 A.2d 1180 (App. Div.1980), we suggested that we would follow Markey and Dambro v. Union Cty. Park Comm'n, 130 N.J.Super. 450, 458, 327 A.2d 466 (Law Div.1974), and "disapproved" of the holdings in Cancel and Kingan.
D'Annunzio, supra, 172 N.J.Super. at 87, 410 A.2d 1180, involved the issue of whether the prohibition in N.J.S.A. 59:9-2(e) precluding a subrogation action against a public entity also barred a claim for contribution. We held that it did not, id. at 92, 410 A.2d 1180, and said:
Although [the Markey ] issue has not been raised on this appeal, the result we reach is consistent with Markey v. Skog, supra, and a like holding in Dambro v. Union Cty. Park Comm'n, 130 N.J.Super. 450, 458, 327 A.2d 466 (Law Div.1974). Thus, the holdings of Cancel and Kingan are disapproved.

[Id. at 91-92, 410 A.2d 1180.]
Moreover, Bock was not required to comply with the Tort Claims Act's notice requirement before he could join the Board as a third-party defendant. N.J.S.A. 59:8-8 requires that a "claim relating to a cause of action for death or for injury or damage to person or to property" be "presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action." While we have not yet addressed this issue, see Speer v. Armstrong, 168 N.J.Super. 251, 256, 402 A.2d 963 (App.Div.1979), Judge Pressler's comment to R. 4:8-1 (third-party practice) states that a defendant need not comply with the notice requirements when impleading a public third-party defendant. According to the comment:
"a third-party complaint for contribution... may be served upon a public entity covered by the ... Act ..., although neither the plaintiff nor the third-party plaintiff has, with respect to the third party defendant, complied with the time requirements of N.J.S. 59:8-8, and although that noncompliance would bar the plaintiff from amending his complaint to state a direct claim against the third-party defendant."
[Pressler, Current N.J. Court Rules, comment on R. 4:8-1 (1999) at 1149.]
See also Markey, supra, 129 N.J.Super. at 205-206, 322 A.2d 513; Pressler, Current N.J. Court Rules, comment on R. 4:7-5 (1999) at 1141. And, as noted in the commentary to N.J.S.A. 59:8-3:
Where plaintiff has not noticed a public entity tortfeasor in accordance with the provisions of this chapter, a defendant may nonetheless bring a third-party action against an entity for contribution under the Joint Tortfeasor's Contribution Law, N.J.S. 2A:53A-1 et seq. Markey v. Skog, 129 N.J.Super. 192, 322 A2d 513 (Law Div.1974). The Markey court held that plaintiffs compliance with the notice provisions of this chapter is not a condition precedent to the existence of liability on the part of the public entity tortfeasor as a third party, since a defendant's right of contribution does not ripen into a cause of action until a defendant has paid more than his share of the judgment.
[Margolis and Novack, Claims Against Public Entities, (Gann 1998), Comment to N.J.S. 59:8-3 at 147-48.]
See also Perello v. Woods, 197 N.J.Super. 539, 485 A.2d 350 (Law Div.1984), in which Judge Yanoff wrote:
From the defendant's viewpoint ... interpreting the provision to require a notice of claim within 90 days of the accrual of the plaintiff's cause of action creates an inequity because he may not even learn that he has a potential contribution claim within this period, since the plaintiff may not file suit until well after the 90-day period.... To subject the defendant's right to contribution to the whims of the plaintiff or the legal competency of its counsel, would run counter to that principle.

....
In the absence of a specific mandate in the Tort Claims Act itself, which does not specifically address the problem of third-party practice, the more reasonable approach is to hold contrary to Ezzi [v. Delaurentis, 172 N.J.Super. 592, 412 A.2d 1342 (Law Div.1980) ], and not require a defendant to *1154 file a notice of claim when the litigation provides the information mandated by N.J.S.A. 59:8-4, even though not in the precise form of N.J.S.A. 59:8-8.
[Perello, supra, 197 N.J.Super. at 546-47, 485 A.2d 350.]
See also Berretta v. Cannon, 219 N.J.Super. 147, 154, 529 A.2d 1070 (Law Div.1987).
In essence, a defendant can assert a third-party action against a public entity beyond ninety days of the accrual of plaintiff's cause of action when the defendant's cause of action accrues thereafter such as here by the right of contribution or indemnification stemming from plaintiff's action. See Mettinger v. Globe Slicing Machine Co., supra, 153 N.J. at 387, 709 A.2d 779 (claim "for contribution or indemnification begins to accrue when the plaintiff recovers a judgment"). We so hold despite our affirmance of the denial of plaintiff's claim against the public entities for failure to give timely notice of the claim. We further hold that the third-party complaint can be filed without a prior notice of claim. Accordingly, we reverse the dismissal of Bock's third-party complaint.

III.
We affirm the denial of the application for late filing against the Township and Board of Education. We also affirm the dismissal of the complaint against Collier High on charitable immunity grounds. We reverse the grant of summary judgment to Bock and reinstate his third-party complaint against the Board of Education.
NOTES
[1] By order of December 6, 1996, the third-party complaint was dismissed as against the Township. Plaintiff's appeal and the cross-appeal of Collier High and Bock are addressed only to the Board of Education and not the Township. Similarly, plaintiff now treats Collier High as a private entity and does not appeal from that portion of the July 16, 1997 order which denied her application to file a late Tort Claims Act notice against Collier High.
[2] According to plaintiff, Bock had already known about her hitting C. and of the racial slurs, but she indicated that she "was defending [her]self."
[3] C. testified at his deposition that during the time plaintiff was reporting C.'s conduct to Bock, C. was also reporting to Bock that plaintiff was directing racial slurs at him. According to C., plaintiff kept calling him "racial names" and Bock told him that he would take care of it.
[4] It was served on Collier High the next day. When summary judgment was granted to Collier High and Bock, the issue relating to the impact of the Tort Claims Act on those defendants was rendered moot.
[5] N.J.S.A. 59:8-9 was amended by L. 1994, c. 49, § 5, adopting the "extraordinary circumstances" test. The amendment was effective June 23, 1994, over two months before plaintiff's eighteenth birthday. See Zois v. New Jersey Sports & Exposition Auth., 286 N.J.Super. 670, 673-75, 670 A.2d 92 (App.Div.1996).
[6] We do not address the impact of the third party complaint on the plaintiff's claim except to note that the third party complaint was filed more than a year after plaintiff's cause of action accrued. See Pilonero v. Township of Old Bridge, 236 N.J.Super. 529, 532-35, 566 A.2d 546 (App. Div.1989); Speer v. Armstrong, 168 N.J.Super. 251, 255-57, 402 A.2d 963 (App.Div.1979).
[7] N.J.S.A. 2A:53A-7(c) now provides:

c. Nothing in this section shall be deemed to grant immunity to: (1) any trustee, director, officer, employee, agent, servant or volunteer causing damage by a willful, wanton or grossly negligent act of commission or omission, including sexual assault and other crimes of a sexual nature;
That provision is an exception to the immunity given by the 1995 amendment to N.J.S.A. 2A:53A-7, to the trustees, directors, officers, agents, servants and volunteers of charities, effective July 24, 1995, which was after the events in this case occurred. See L. 1995, c. 183, §§ 1, 2. The 1995 enactment provided that "[t]his act shall take effect immediately and shall apply to all causes of action arising on or after the effective date." See Cornblatt v. Barow, 153 N.J. 218, 231-36, 708 A.2d 401 (1998); Gibbons v. Gibbons, 86 N.J. 515, 432 A.2d 80 (1981).
[8] Today, of course, under the entire controversy doctrine, if the defendant knows that he or she has a claim for contribution or indemnification, the claim "should be asserted in the original action." Mettinger v Globe Slicing Machine Co., Inc., 153 N.J. 371, 387, 709 A.2d 779 (1998). Mettinger also makes clear that a claim "for contribution or indemnification begins to accrue when the plaintiff recovers a judgment." Ibid.; see also Harley Davidson Motor Co. Inc. v. Advance Die Casting, Inc., 150 N.J. 489, 696 A.2d 666 (1997).
[9] Markey cited the then existing version of N.J.S.A. 59:9-3, which was subsequently amended in 1987. However, the amendments did not change the former subsection (a) or the cases interpreting it, including Markey v. Skog, supra. See Margolis and Novack, Claims Against Public Entities (Gann 1998), Comment to N.J.S. 59:9-3 at 182.