129 N.J. Super. 192 (1974)
322 A.2d 513
MARIE MARKEY AND WILLIAM F. MARKEY, HER HUSBAND, PLAINTIFFS,
v.
CARL SKOG, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
NEW JERSEY DEPARTMENT OF TRANSPORTATION, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 21, 1974.
*195 Mr. Jack A. Maloof for defendant and third-party plaintiff (Messrs. Colquhoun, Kennedy & Brogan, attorneys; Mr. Jack A. Maloof on the brief).
Messrs. John S. Fitzpatrick and Thomas D. Monte, Jr. for third-party defendant (Mr. William F. Hyland, Attorney *196 General of New Jersey, attorney; Mr. Thomas D. Monte, Jr. on the brief).
PRESSLER, J.C.C. (temporarily assigned).
This automobile negligence action, by reason of the third-party complaint filed by defendant Carl Skog against the New Jersey Department of Transportation (hereinafter "State"), raises an important question of construction of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., which has not heretofore been dealt with by any reported decision of our courts. That question, posed by the motion of the State for dismissal of the third-party complaint, is whether the viability of the right of a nonpublic defendant to seek contribution from a public entity as a joint tortfeasor is dependent upon plaintiff having complied with the claim presentation requirements of N.J.S.A. 59:8-8. For the reasons hereinafter set forth, the court has determined that it is not.
The essential facts involved in this litigation, insofar as they are implicated in the motion to dismiss the third-party complaint, are undisputed and may briefly be stated. Plaintiffs Marie Markey and William F. Markey (hereinafter "Markey"), were, on October 28, 1972 passengers in Skog's automobile which he was then driving on Route 23 southbound in Riverdale, New Jersey. They claim to have been injured when Skog's automobile collided with a traffic island curbing in the roadway. They filed their complaint against Skog in October 1972, alleging negligence on his part in his operation of his vehicle. Skog was served on October 30, 1972 and filed and served his answer in due course. On August 15, 1973 Skog filed a notice of motion, served only upon plaintiffs in accordance with R. 4:8-1, seeking leave to file and serve a third-party complaint against the State. An order granting such leave was entered on September 19, 1973 and within the ensuing week the third-party complaint was filed and served, seeking contribution from the State as a joint tortfeasor on the theory, as it thereafter *197 appeared, that the State's negligence in its design and maintenance of the roadway in question was a substantial contributing cause of the accident.[1]
It is conceded that plaintiffs have never made a direct claim against the State in respect of this accident on this or any other theory; that they have not, since the filing of the third-party complaint, sought leave to amend their complaint to seek direct relief from the State, and finally, that they have not, despite the State's notice to them of the pending motion to dismiss, participated in these proceedings at all. It is further conceded that the State's first notice of plaintiffs' accident and of the defendant's contribution claim was the third-party complaint served upon it some 11 months after the event.
The State's answer to the third-party complaint denies negligence and alleges, by way of affirmative defense, that its sovereign immunity bars the contribution claim, and it is essentially the sovereign immunity defense which is being urged in support of its pending motion. The State's basic contention is that the New Jersey Tort Claims Act, effective July 1, 1972, does not constitute an abrogation of the doctrine of sovereign immunity but rather is a limitation on the application of that doctrine pursuant to which the State has agreed, in effect, to recognize and permit the adjudication against it only of certain tort claims of a defined substantive *198 nature and provided, further, that such claims are processed, presented and proceeded upon in accordance with the strict procedural requirements of the act. Hence, it argues, if a plaintiff fails to perfect his claim against the State by having failed to comply with the procedural requirements of the act, the State is not only not liable to the plaintiff but is also relieved of liability in respect of all consequences of its alleged negligence, including liability to a joint tortfeasor for contribution.
The State seeks to support this conclusion by a literal construction of the act, relying first on N.J.S.A. 59:8-3, which provides that "No action shall be brought against a public entity under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." The State then points to N.J.S.A. 59:8-8, which provides that "A claim relating to a cause of action for death or for injury to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action." That section further provides that "the claimant shall be forever barred from recovering against a public entity if" he has failed to file his claim with it within 90 days after its accrual unless, pursuant to N.J.S.A. 59:8-9, he has obtained leave from the Superior Court extending the filing time for one year following the accrual of the claim. The State urges that the word "claim," as used in both N.J.S.A. 59:8-3 and 59:8-8, must be construed to mean the primary claim of the person who has sustained the death, personal injury or property damage resulting from the public entity's alleged negligence. Thus, it reasons, if the primary claim is barred by the primary claimant's inaction during the 90-day period, the State is no longer liable to the primary claimant and, therefore, cannot be liable to any derivative claimant, including a joint tortfeasor. The logical consequence of this position, which it asserts by way of a supplemental brief, is that a private joint tortfeasor seeking contribution does not have any procedural device available *199 to him to cure a plaintiff's failure to have pursued the statutory remedy against the public entity, and thus cannot preserve his right to contribution against the State even if he were himself to put the public body on notice within the 90-day period. The State insists, therefore, that a private joint tortfeasor's right to contribution from it is exclusively dependent on the plaintiff's unilateral election to seek recovery from the State in accordance with the act.
It is the court's conclusion that the State's argument misconceives not only the history, purpose and construction of the Joint Tortfeasors Contribution Law, N.J.S.A. 2A: 53A-1 et seq., but also the history and purpose of the New Jersey Tort Claims Act.
The adoption by the Legislature in 1952 of the Joint Tortfeasors Contribution Law obviously proceeded from its intention to alleviate the evident harshness and inequity of the common-law rule then obtaining in this State pursuant to which there was no right of joint tortfeasors to seek allocation among themselves of the burden of their fault. Under the common-law rule plaintiff was not only free to determine which among joint tortfeasors, if less than all, he chose to sue but was also free to determine which of them, if he obtained judgment against more than one, he would charge with the burden of satisfying the judgment and, if more than one, in what proportion. The right of contribution which is afforded by the 1952 act constitutes a recognition of the equitable doctrine that a "tortfeasor who satisfies the judgment is entitled to be put on the same footing with those who are equally liable for the wrong remedied by the judgment." Kennedy v. Camp, 14 N.J. 390, 398 (1954). The public-policy basis of the contribution doctrine was further articulated by Justice Heher in Kennedy as follows:
Apart from its foundation in the "clearest principles of natural justice", the doctrine "has an equal foundation in morals; since no one ought to profit by another man's loss; where he himself has incurred a like responsibility. Any other rule would put it in the power of the creditor to select his own victim; and, upon motives *200 of mere caprice or favoritism, to make a common burden a most gross personal expression. It would be against equity for the creditor to exact or receive payment from one, and to permit, or by his conduct to cause, the other debtors to be exempt from payment." Story's Equity Jurisprudence (11th ed.) sections 492, 493. The gravamen of the action for contribution is the discharge of the joint tortfeasor's common liability for the common wrong, enforceable by action at the instance of the injured person.
See also, Tino v. Stout, 49 N.J. 289, 295-297 (1967).
It is clear that a defendant's right to contribution from a joint tortfeasor is, therefore, an inchoate right which does not ripen into a cause of action until he has paid more than his pro rata portion of the judgment obtained against him by the plaintiff. It is at that point that his cause of action for contribution accrues. See McGlone v. Corbi, 59 N.J. 86, 94-95 (1971). The assertion by codefendants in a negligence action of a right of contribution inter sese and the right of a defendant to implead a joint tortfeasor by a third-party complaint before plaintiff's cause of action has been reduced to a judgment are merely devices of procedural convenience afforded by the rules of practice. See R. 4:7-5 and R. 4:8-1. Thus, although a defendant is not necessarily bound to proceed against joint tortfeasors in the same action in which plaintiff seeks to establish his (defendant's) liability, he ordinarily will, nevertheless, do so because a single action is the most orderly and logical manner in which proof of common liability can be established  and it is, of course, common liability which is the substantive basis of the right of contribution.
The extent and duration of such common liability as will support a right to contribution is also well settled. It is common liability at the time of the accrual of plaintiff's cause of action which is the sine qua non of defendant's contribution right. If there is common liability to plaintiff at that time  that is, common liability as a matter of fact even although, necessarily, then unadjudicated  defendant cannot be deprived of his inchoate right by reason of plaintiff's loss thereafter of his own right of direct *201 action against the joint tortfeasor. Thus, for example, if plaintiff is barred from pursuing his cause of action against one of two joint tortfeasors because the statute of limitations has run in respect of his own claim, the inchoate contribution right of the tortfeasor who has been sued prior to the running of the statute nevertheless remains viable and does not accrue until he has paid more than his pro rata share of the judgment. Hence, the party defendant has the right to implead the unjoined joint tortfeasor in plaintiff's action for the purpose of proving their common liability even after the statute of limitations on plaintiff's claim has run. Any other rule would not only be contrary to the conceptual basis of the cause of action for contribution but would also be contrary to the policy of the contribution statute, which seeks to prevent plaintiffs, by their unilateral actions, from electing where to place the burden of a common fault. See Cooper v. Philadelphia Dairy Products, 34 N.J. Super. 301 (Law Div. 1955); McGlone v. Corbi, 59 N.J. 86, 94-95 (1971); Annotation, "Running of a Statute of Limitations Against Claim for Contribution or Indemnity Based on Tort," 20 A.L.R.2d 925 (1951). And see, Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 389 (1954), dealing with a joint tortfeasor's defense in a contribution claim brought after entry of judgment, based on the then applicable interspousal immunity, plaintiff and defendant having married after the judgment was entered. The court there noted, in sustaining the contribution right, that "the continued subsistence of the common liability is not a sine qua non to enforcement contribution under the statute."
The State here concedes that plaintiffs Markey could have perfected a right of action against it by having complied with the claim-presentation provisions of N.J.S.A. 59: 8-8, and that if they had done so, it could not then have challenged defendant Skog's right to seek contribution from it. It seeks to avoid the analogy to the statute of limitations situation, however, by relying both on the verbiage of the *202 New Jersey Tort Claims Act and on what the court believes to be a fundamental confusion between the quite different concepts of right and remedy.
The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., represents, of course, the legislative response to Willis v. Dept. of Cons. & Ec. Dev., 55 N.J. 534 (1970), in which our Supreme Court, recognizing the plain injustice of refusing relief to persons injured by the wrongful conduct of the State, effectively abolished the defense of sovereign immunity in tort actions. In order, however, to afford the Legislature an opportunity to consider and express its will on such questions involved in the adjudication of tort claims as the requirement of notice, the fixing of monetary limits of recovery, the exclusion of certain categories of damages, the applicable concept of liability and the delegation of adjudication to an administrative agency, the court limited its holding to those tort claims arising after January 1, 1971, a date extended by the Legislature to July 1, 1972, the effective date of the Act. See N.J.S.A. 52:4A-1, as amended. And see, Maule v. Conduit & Foundation Corp., 124 N.J. Super. 488 (Law Div. 1973); Perillo v. Dreher, 126 N.J. Super. 264 (App. Div. 1974).
Neither the act itself, as finally adopted, nor the Report of the Attorney General's Task Force on Governmental Immunity (May 1972)[2] on which the act is essentially based, addresses itself directly to the contribution problem now before the court. But while both are silent with respect to any time limitations or other bar to the assertion of a contribution claim against the State, both expressly recognize the potentiality of the State's status as a joint torfeasor by imposing monetary limitations upon its contribution obligation. See N.J.S.A. 59:9-3, which, as explained by the *203 accompanying Comment,[3] limits the State's pro rata share of the actual judgment in accordance with the maximum judgment recoverable against it by plaintiff pursuant to the provisions of N.J.S.A. 59:9-2.
The State urges, relying on N.J.S.A. 59:1-2, that the legislative failure to have expressly permitted the assertion of contribution claims where plaintiff himself has not perfected his cause of action against the State must be deemed to constitute a legislative intention that the State shall continue immune from contribution claims made under that circumstance. N.J.S.A. 59:1-2, the basic policy expression of the act, provides in full as follows:
The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration. [Emphasis supplied]
The State's reasoning in this regard is based upon its reading of the italicized sentence of this section as continuing the State's sovereign immunity except where the act specifically and affirmatively provides to the contrary. That statement, however, is obviously not intended to qualify the entire scope of the State's tort liability, but rather constitutes a qualification of the preceding sentence of the section, the clear intention of which is to continue the State's immunity only with respect to those areas of governmental *204 activity recognized by Willis, supra, 55 N.J. at 540, as properly excluded from tort claim susceptibility, such as legislative and judicial action or inaction, and decisions calling for the exercise of official judgment or discretion. See, so construing N.J.S.A. 59:1-2, Maule v. Conduit & Foundation Corp., 124 N.J. Super. at 492. And see, e.g., implementing this limitation on liability, N.J.S.A. 59:2-3 to 59:2-8, inclusive, and 59:3-2 to 59:3-13, inclusive. Thus, since N.J.S.A. 59:1-2, as well as 59:2-1(a), an analogous provision of similar import, are both statements of substantive limitation on the State's liability, neither is reasonably construable as dealing with procedural bars in respect of those categories of tort claims for which the State has accepted liability.[4] Those bars are exclusively the subject of chapter 8 of the act.
The State next urges that the contribution claim is here barred because the State has no common liability with defendant, arguing that under N.J.S.A. 59:8-8, it has no independent liability to plaintiffs because of their failure to have filed a 90-day notice. That, however, is nonliability after the fact. Common liability for contribution purposes is, as noted, determinable as of the date of the accrual of plaintiff's claim. That a plaintiff is barred from pursuing his cause of action after 90 days  and "barred" is the word used by N.J.S.A. 59:8-8  does not mean he did not have the right to do so at the time his cause of action accrued. The subsequent loss of the remedy, therefore, as in the statute of limitations case, does not operate retroactively, for contribution purposes, to wipe out the right of action which existed before the bar to the remedy was raised by plaintiff's inaction. That is to say, the 90-day notice is not a condition precedent to the existence of liability on the part of the State. It is a condition only upon a plaintiff's right thereafter to pursue his remedy against the State.
*205 The State's final argument is based on N.J.S.A. 59:9-3, heretofore referred to, construed by the State to constitute a limitation on the right to assert a contribution claim. As noted, however, the limitation of that section is not on the substantive right to seek contribution but rather is a monetary limitation on the remedy of contribution after the right is established.
The court's conclusion that there is nothing in either the text, the history or the policy of the Tort Claims Act which mandates the abrogation or limitation of the right of contribution as heretofore legislatively established and judicially construed is in accord with the determination of the majority of jurisdictions which have considered this question in the context of governmental tort claims acts substantially similar to ours. See Olsen v. Jones, 209 N.W.2d 64 (Iowa Sup. Ct. 1973); Geiger v. Calumet Cty. 18 Wis.2d 151, 118 N.W.2d 197 (Sup. Ct. 1962); Zillman v. Meadowbrook Hosp. Co., Inc., 73 Misc.2d 726, 342 N.Y.S.2d 302 (Sup. Ct. 1973); Roehrig v. Louisville, 454 S.W.2d 703 (Ky. Ct. App. 1970); Cotham v. Bd. of Cty. Comm'rs, 260 Md. 556, 273 A.2d 115 (Ct. App. 1971); Royal Car Wash Co. v. Mayor, etc. of Wilmington, 240 A.2d 144 (Del. Super. Ct. 1968). And see Annotation, "Claim Against Municipality  Notice," 93 A.L.R.2d 1385 (1964). The basic ratio decidendi of these decisions is that in the absence of a clear legislative mandate to the contrary, the interest of the State both in obtaining repose and in having a timely opportunity for the investigation of claims against it must yield to the overriding equities which underpin the contribution laws. Only two states have reached a contrary conclusion, Minnesota and Colorado. See Jensen v. Downtown Auto Park, Inc., 289 Minn. 436, 184 N.W.2d 777 (Sup. Ct. 1971), and Powell v. Brady, 30 Colo. App. 406, 496 P.2d 328 (Ct. App. 1972).
California, upon whose Tort Claims Act, Cal. Gov't. Code, § 810 et seq., the New Jersey Tort Claims Act was based, (see Comment accompanying N.J.S.A. 59:2-1), has not *206 dealt with the question now before this court, and that for the reason that it has adopted only a very limited modification of the common-law no-contribution rule and does not recognize the right of a defendant to implead an unjoined joint tortfeasor. See General Elec. Co. v. State ex rel. Dept. of Pub. Wks., 32 Cal. App.3d 918, 108 Cal. Rptr. 543 (D. Ct. App. 1973). That vagary of the California contribution law may well account for the silence of the California Tort Claims Act and, consequently, the silence of the New Jersey act.
The foregoing is not necessarily to say that the Legislature might not, if it chooses, impose express procedural limitations on the right of contribution from public entities. This court cannot, however, conclude that the Legislature has yet done so. But see, Reich v. State, 386 Mich. 617, 194 N.W.2d 700 (Sup. Ct. 1972), holding unconstitutional as a violation of the federal equal protection guaranty what it construed as a legislative intent to deny defendants whose right of contribution lay against a public entity the same scope and extent of the right as afforded those whose joint tortfeasors were private persons.
For the reasons hereinabove set forth, the motion of the third-party defendant for dismissal of the third-party complaint is denied.
NOTES
[1] The third-party complaint also sought indemnification from the State. At the argument of this motion, however, defendant conceded that his claim for indemnification would not lie under the doctrine, most recently reiterated in Schramm v. Arsenal Esso Station, 124 N.J. Super. 135 (App. Div. 1973), that the right to common-law indemnification requires the freedom from fault of the person seeking that relief. Hence, if defendant were ultimately found to be free from fault, there would be no liability on his part for which indemnity could be sought and if the defendant were ultimately found to be at fault then all it would be entitled to from the State, if it were also found to be at fault, would be contribution. Accordingly, the indemnity claim was stricken from the third-party complaint, leaving only the contribution claim to be disposed of.
[2] See N.J.S.A. 52:17B-4.1 and 4.2.
[3] The Comments accompanying the text of the act are taken from the Task Force Report.
[4] As to the State's liability for negligence in road maintenance generally, see N.J.S.A. 59:4-2.