864 A.2d 1168 (2005)
374 N.J. Super. 409
The DIOCESE OF METUCHEN, Plaintiff,
v.
PRISCO & EDWARDS, AIA, a Professional Association and The Prisco Group, a Professional Organization, Defendants, and
Prisco & Edwards, AIA, a Professional Corporation and The Prisco Group, a Professional Corporation, Third-Party Plaintiffs-Respondents,
v.
Remington & Vernick Engineers, Third-Party Defendant-Appellant, and
Epic Incorporated, Epic Group, Inc., Epic Management, Inc., Epic Construction, Epic Interiors, Maximum Air Conditioning & Heating Corp., E.R. Barrett, Inc., Premier Steel Contractors, Inc., Total Pipe, Allied Sheet Metal, Adriana Electrical Contractors, Ravel Engineering Company, JQ Landscaping, Finishing Touch Asbestos Abatement Corporation, Ahera Consultants, North Jersey Maximum Mechanical Company, Crisdel Group, Inc., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 2004.
Decided January 25, 2005.
*1169 Ellis I. Medoway, Haddonfield, argued the cause for Third-Party Defendant-Appellant Remington & Vernick Engineers (Archer & Greiner, attorneys; Mr. Medoway and William L. Ryan, on the brief).
Meredith Kaplan Stoma, Livingston, argued the cause for Third-Party Plaintiffs, Prisco & Edwards, AIA and the Prisco Group (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Ms. Kaplan Stoma, of counsel; Edward P. Drummond, on the brief).
Before Judges A.A. RODRIGUEZ, CUFF and HOENS.
The opinion of the court was delivered by
HOENS, J.A.D.
By leave granted,[1] third-party defendant Remington & Vernick Engineers (Remington) appeals from the October 3, 2003 order of the Law Division concluding that defendants-third-party plaintiffs Prisco & Edwards, AIA, and Prisco Group (collectively Prisco) are not required to serve an Affidavit of Merit. We affirm.
The facts that are germane to this novel issue are as follows. In 1998, plaintiff, the Diocese of Metuchen, decided to convert a former high school into a corporate business center where it intended to centralize its consolidated business functions. The Diocese invited several design and architectural firms to submit proposals, following which it selected Prisco for the project. The Diocese then entered into a contract pursuant to which Prisco performed architectural and other services[2] relating to the design and construction activities to be undertaken at the site. The Diocese later separately contracted with Epic Construction to serve as the general contractor for the project.
Thereafter, Remington submitted to Prisco its proposal for work it would perform on the project. That proposal described its work as mechanical, plumbing, electrical and structural engineering services, together with other design support services. On September 27, 1999, Prisco and Remington executed a standard AIA form agreement that incorporated Remington's proposal, including its description *1170 of the professional services it would perform.
In 2002, the Diocese filed its complaint, which named only Prisco & Edwards, AIA, and the Prisco Group[3] as defendants. According to that complaint, the HVAC system in the building and the parking area drainage around the building were improperly designed, the Diocese was overcharged for portions of the work, the project was delayed by inadequate responses to requests for information and submittals, the completion of the project was hampered by design errors and various aspects of the plumbing system were faulty. In reviewing the complaint filed by the Diocese, Prisco concluded that some of the allegations relating to the actual construction of the project should have been directed to the general contractor or to subcontractors engaged by the general contractor, and were not due to any fault on Prisco's part. In addition, although Prisco, the architect, had designed the project and had prepared the plans and specifications, it believed that some of the claimed design inadequacies were really claims relating to the work of Remington, its consulting engineer. Prisco concluded that the claims by the Diocese relating to the engineering aspects of the project raised issues that fell within the scope of Remington's work.
Because the claims being made by the Diocese, therefore, rested on actions of other entities, Prisco filed its third-party complaint. Prisco named as third-party defendants its engineering consultant Remington, along with the general contractor Epic, and a variety of subcontractors with whom Prisco had no direct contracts, but which had worked on the project through agreements with the general contractor. Substantively, Prisco's pleading included a general denial that Prisco was liable to the Diocese and asserted that the fault, if any, giving rise to the Diocese's claimed damages lies with the third-party defendants. Specifically, the third-party complaint asserted, in a single count, that the third-party defendants are liable to Prisco pursuant to the Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1 to -5, and based on theories of comparative negligence, see N.J.S.A. 2A:15-5.1 to -5.4, and contractual and common law indemnification.
Significant to the issues on appeal are the allegations of the third-party complaint respecting professional negligence. In relevant part, Prisco denied the allegations in the complaint relating to claims of professional negligence in the design of the project. Although its third-party complaint did not specifically assert that the professional negligence, if any, was Remington's and not Prisco's, its general references to negligence of Remington include, of necessity, the claim that the professional negligence, if any, was Remington's. After Remington filed its answer to the third-party complaint, Prisco moved for an order declaring that it was not required to serve an Affidavit of Merit on Remington. For reasons expressed at length in an oral opinion, the trial court agreed. This interlocutory appeal followed.
These facts present us with the question that we explicitly left open in Burt v. West Jersey Health Systems, 339 N.J.Super. 296, 771 A.2d 683 (App.Div.2001), namely, whether a defendant that raises claims sounding in professional negligence against a new party by way of a third-party complaint must file an Affidavit of Merit. Id. at 305 n. 2, 771 A.2d 683. We address this novel question at some length.
*1171 The Affidavit of Merit statute, N.J.S.A. 2A:53A-27, provides in pertinent part:
In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.
[N.J.S.A. 2A:53A-27.]
The statute further defines "licensed persons" to include, among others, architects and engineers. N.J.S.A. 2A:53A-26(b), -26(e).
In Burt, we began by first reviewing the nature and purpose of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.4, and the Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1 to -5. In short, we noted that the two statutes are designed to promote the ultimate purpose of achieving shared responsibility as among joint tortfeasors and to avoid the harsh results otherwise imposed by common law rules preventing allocation of fault among joint tortfeasors. See Burt, supra, 339 N.J.Super. at 303, 771 A.2d 683 (citing Holloway v. State, 125 N.J. 386, 401, 593 A.2d 716 (1991); Sattelberger v. Telep, 14 N.J. 353, 367-68, 102 A.2d 577 (1954); Arcell v. Ashland Chem. Co., 152 N.J.Super. 471, 485, 378 A.2d 53 (Law Div.1977); Markey v. Skog, 129 N.J.Super. 192, 199, 322 A.2d 513 (Law Div.1974)).
We sought in Burt to harmonize these principles with the goal that the Legislature intended when it enacted the Affidavit of Merit statute. We referred to the seminal decision respecting the Affidavit of Merit statute, which described it as being "part of `a package of five tort reform bills intended to "bring common sense and equity to the State's civil litigation system."'" Id. at 304, 771 A.2d 683 (quoting Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 228, 708 A.2d 401 (1998))(citing Office of the Governor, News Release 1 (June 29, 1995)).
In applying the principles derived from these several statutes, we concluded in Burt that their essential goals were "to ameliorate the harshness of the common-law contributory negligence bar to recovery, and [to] permit a plaintiff to recover even though he or she may be negligent to some degree, yet, at the same time, provide that ordinarily each tortfeasor will respond in damages according to its own adjudicated percentage of fault." Ibid. That analysis led us to conclude that the statutory right of one defendant to pursue contribution as against another defendant could not be extinguished by the failure of one defendant to serve an Affidavit of Merit as against another. Id. at 304-05, 771 A.2d 683. In so holding, we specifically declined to extend the reach of the Affidavit of Merit statute to cross-claimants. Id. at 305, 771 A.2d 683.
More recently, we determined that a counterclaim that sounds in professional negligence, however, is subject to the Affidavit of Merit statute. Manganaro Consulting Eng'rs Inc. v. Carneys Point Township Sewerage Auth., 344 N.J.Super. 343, 347-48, 781 A.2d 1116 (App.Div.2001). We there distinguished between professional negligence which is raised purely as an affirmative defense, namely, that the plaintiff's malpractice precludes that plaintiff from recovering on its complaint for payment for its services, see Saffer v. Willoughby, 143 N.J. 256, 272, 670 A.2d 527 *1172 (1996), and professional negligence raised in the context of a counterclaim asserting an affirmative claim for damages. See Manganaro, supra, 344 N.J.Super. at 347-48, 781 A.2d 1116. The distinction is an important one, for it makes plain the difference between a claim that must be asserted and proven in an effort to secure an award of damages and one which does not. And it makes equally plain the distinction between claims raising professional negligence that must be supported by an Affidavit of Merit and those that do not.
Most recently, our Supreme Court, in addressing the applicability of the Affidavit of Merit statute, has noted that we must analyze the true nature of the particular claim being asserted in the pleading and consider whether the Legislature intended that it be one to which the statute applies. See Couri v. Gardner, 173 N.J. 328, 333-34, 801 A.2d 1134 (2002). There, the Court addressed the role of the Affidavit of Merit statute as it applies to claims denominated as breach of contract suits, cautioning that the analysis cannot be based solely on the "label placed on the action[s]." Id. at 340, 801 A.2d 1134. Rather, the applicability of the Affidavit of Merit statute to any claim relates to the nature of the proofs required by a party in order to prevail on its claim. Ibid.
With these principles in mind, we turn to the question raised in this appeal. Certainly, the true nature of the claim being asserted in this matter is not hard to divine. Indeed, the claim of Prisco as against Remington, while couched in terms of professional negligence, is entirely derivative of the claim made against Prisco by the Diocese. For its part, Prisco denies both that any of its work fell below the applicable standards of professional care and that any of its acts was the cause of the complaints raised by the Diocese. As an aspect of its defense, it necessarily asserts that none of the work performed by its professional consultants, including Remington, its consulting engineer, was negligent either.
Notwithstanding those assertions, however, it is plain from the face of the initial complaint that some of the alleged defects and deficiencies identified by the Diocese, if proven, implicate the adequacy of the work performed by the engineers rather than by the architects. That being the case, Prisco's third-party pleading, as against Remington, asserts a true claim for contribution and for allocation of fault as among joint tortfeasors rather than an independent claim of professional negligence. It is therefore analytically more like the positions of the parties in Burt than in Manganaro or Couri. In Burt, we recognized that a defendant is not required to file an Affidavit of Merit when it raises a cross-claim against a co-defendant even if both of the defendants are professionals and even if the claims of the plaintiff against that co-defendant have been dismissed. See Burt, supra, 339 N.J.Super. at 305, 771 A.2d 683. Thus, the claim for allocation of fault survived the dismissal of the plaintiff's claim without service of the Affidavit of Merit. Even though the result of that analysis was that the remaining defendant would, of necessity, bear the burden of proving the professional negligence of its former co-defendant, it was permitted to do so without complying with the Affidavit of Merit statute.
To be sure, a part of our analysis there rested on the fact that the plaintiff had named all of the potentially culpable parties as defendants. In that circumstance, each defendant could rely on the plaintiff to file the required Affidavit of Merit. Ibid. Moreover, a part of our analysis there rested on the fact that the language of the statute itself refers to plaintiffs and not to cross-claimants. Ibid. Those apparent distinctions, however, do not require *1173 a contrary result here. Neither factor, properly analyzed, supports Remington's assertion that Prisco should be required to serve an Affidavit of Merit.
To begin with, the adequacy or deficiency of the particular Affidavit of Merit served by the Diocese cannot logically be the basis for a principled analysis of the statutory requirement. Second, however, as in Couri, where we are reminded to look beyond the label used in the pleading to the substance of the matter, we decline here to conclude that Prisco must serve the Affidavit of Merit merely because the word "plaintiff" appears as part of its party designation.
We conclude that the third-party complaint filed here, like the cross-claim in Burt, seeks only to direct the claims made by the plaintiff from the only named defendant to the party at fault rather than, as in Manganaro, to raise a new affirmative claim. In this context, the fact that the Diocese did not name the engineers as direct defendants is of no moment, particularly given the fact that its contract was with Prisco and it is entitled to assert all of its claims concerning the acts or omissions of Prisco or its consultants against Prisco as the party with whom it contracted.
Similarly, the fact that the Diocese served an Affidavit of Merit referring only to architectural malpractice is irrelevant to the larger question of whether the claims, if proven, are more properly the fault of Remington. Prisco merely seeks to pass plaintiff's claims through to Remington in the event that plaintiff is able to demonstrate professional negligence relating to engineering services performed by Remington. It does not assert any new or affirmative claim at all. We therefore conclude that where a defendant subject to the Affidavit of Merit statute asserts a third-party claim in the nature of contribution or joint tortfeasor liability as against another professional also subject to the statute, no Affidavit of Merit is required.
We reach this result not only based on our analysis of the meaning of the statute and the nature of the particular claims, but for a far more practical reason as well. We are aware that the third-party defendant has asserted that, contrary to the statute, it will be required to defend claims that have not been specifically reviewed and found to have merit by a like professional. In construction litigation, however, it is often the case that a plaintiff project owner selects as its defendant the party with whom it directly contracted for design services even if the performance of those services implicates more than one professional discipline. In that context to require the architect, which vigorously rejects any suggestion that it or any of its design consultants engaged in malpractice, to affirmatively articulate professional malpractice claims against its consultant would prove to be unworkable and unwise.
Nor, for that matter, would requiring Prisco to serve an Affidavit of Merit against its consulting engineer further any purpose of the statute. The claims against Remington in reality rise or fall on the strength of plaintiff's proofs. While it might be argued that the Diocese, having served merely an architectural Affidavit of Merit, should be barred from asserting that which is truly an engineering claim, we decline to hold that the named defendant, while asserting that neither it nor its consultants were negligent, should be required to make a better case against the professional consultants it adds to the litigation as third parties than plaintiff did for itself.
Affirmed.
NOTES
[1] We originally denied Remington's motion for leave to appeal and for summary disposition in our order dated January 8, 2004. Following our denial of that motion, the Supreme Court granted Remington's application for leave to appeal in its March 9, 2004, order which remanded this matter to us for our consideration on the merits.
[2] The contract between the Diocese and Prisco was not included in the record on appeal, but the specific provisions of that contract are not important to our analysis of the issues presented on appeal.
[3] Although the Diocese named the two Prisco entities separately as defendants, its complaint apparently did not distinguish between these entities in any way significant to the issue raised in this appeal.