**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0607-20

THE ESTATE OF JAMES
RHODA, by and through his
Executor, KAREN RHODA,

     Plaintiff-Respondent,

v.

SOUTH JERSEY EXTENDED
CARE, H.W./WEIDCO/REN,
LLC, BRIDGETON H&V
REALTY LLC, COMPREHENSIVE
HEALTHCARE MANAGEMENT,
BROADWAY HEALTHCARE, and
ROBERT PATITUCCI, M.D.,

     Defendants-Appellants.

_____

Submitted March 9, 2021 – Decided May 4, 2021

Before Judges Fisher and Moynihan.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0704-16.

Marshall Dennehey Warner Coleman & Goggin, attorneys for appellants South Jersey Extended Care,

H.W./WEIDCO/REN LLC, Bridgeton H & V Realty LLC, Comprehensive Healthcare Management and Boadway Healthcare (Walter F. Kawalec, III, Lynne N. Nahmani, Sharon C. Suplee, and Evan H. Holland, on the briefs).

German, Gallagher & Murtagh, PC, attorneys for appellant Robert Patitucci, M.D., join in the briefs of appellants South Jersey Extended Care, H.W./WEIDCO/REN LLC, Bridgeton H & V Realty LLC, Comprehensive Healthcare Management and Boadway Healthcare.

Davis & Brusca, LLC, attorneys for respondents (Mark W. Davis and Michael Brusca, on the brief).

PER CURIAM

On leave granted, defendants South Jersey Extended Care (SJEC), H.W./Weidco/Ren, LLC, Bridgeton H&V Realty, LLC, Comprehensive Healthcare Management and Broadway Healthcare (collectively the nursing home defendants)[1] appeal from the trial court's order denying their motion to file a third-party complaint joining Inspira Medical Centers, Inc., Inspira Medical Center Vineland (collectively Inspira) and Delaware Valley Urology, LLC to an action filed against SJEC based in negligence, violation of the New Jersey Nursing Home Responsibilities and Rights of Residents Act, N.J.S.A.

---

[1] The nursing home defendants claim they were improperly pled and should have been named as H.W./Weidco/Ren, LLC, d/b/a South Jersey Extended Care. This issue has no impact on our analysis.

2                                                                      A-0607-20

30:13-1 to -17, and willful and wanton acts resulting in an infection that led to a partial amputation of plaintiff James Rhoda's penis.[2]

"The grant or denial of a motion for leave to proceed against a third-party defendant is a matter left to the sound discretion of the trial" court. Scott v. Garber, 82 N.J. Super. 446, 451 (App. Div. 1964). We will overturn the trial court's determination only when there is a clear abuse of discretion. Ibid. We have sustained a trial court's exercise of discretion where it "refuse[d] to permit new claims and new parties to be added late in the litigation and at a point at which the rights of other parties to a modicum of expedition will be prejudicially affected." Du-Wel Prods., Inc. v. U.S. Fire Ins. Co., 236 N.J. Super. 349, 364 (App. Div. 1989). We do not perceive that to be the case here and reverse.

Plaintiff was admitted as a resident of SJEC, a nursing facility, in August 2014. He alleged the nursing home defendants failed to: (1) adequately monitor and care for plaintiff's Foley catheter which led to an infection, specifically Fournier's gangrene; and (2) assess and treat that infection leading to a partial penectomy, penile debridement and placement of a suprapubic tube through

---

[2] Plaintiff's wife also brought a per quod claim. Plaintiff passed away from causes unrelated to this action during its pendency.

A-0607-20

plaintiff's lower abdomen performed at Inspira on December 23, 2014, following his admission to the hospital three or four days earlier.[3]

Plaintiff did not file a direct claim against third-party defendants. In August 2020, the nursing home defendants sought leave to file a third-party complaint and to extend the then-August 21, 2020 discovery end date (DED) for 120 days. The nursing home defendants, if it was determined they were liable to plaintiff, sought contribution from third-party defendants—including Delaware Valley Urology, LLC, which treated plaintiff before his admission to SJEC and after his admission to Inspira—alleging they improperly assessed, monitored and treated plaintiff's urological needs, and that their delay in diagnosing the infection—which was not confirmed until the day of plaintiff's surgery—and treatment led to plaintiff's injuries.

The trial court found "[t]he problem/concern with the motion is timing." Noting the complaint was filed on October 17, 2016, the court recognized the case was "nearly four years old," the DED had been extended ten times and had

---

[3] The record is not clear as to the exact date plaintiff was transferred to Inspira. The nursing home defendants' merits brief avers plaintiff "was transferred to the emergency department at Inspira" and, without factual citation, further claims "[n]one of [the] medical personnel attending [plaintiff] at Inspira diagnosed [him] with Fournier's gangrene on December 19, 2014." The balance of the record sets plaintiff's admission date as December 20, 2014.

only fifteen days remaining when the nursing home defendants' motion was filed and only some experts' depositions had not yet been taken because of COVID-related delays. The court, which had been actively managing the case, observed the motion to join the third parties had never before been mentioned. It found:

> There are at least [twelve] expert reports that have been exchanged. The adding of [two] medical defendants would require additional expert reports that may or may not challenge or introduce liability or causation issues not addressed earlier requiring supplemental expert report[s] from the [twelve] existing experts. Though defendant at oral argument suggested that adding these parties would not prejudice . . . plaintiff, this court is not at all convinced. Although this case will not be tried in the foreseeable future because of COVID restrictions, this case will be substantially delayed if this motion is granted.

The only prejudice specified by the trial court was the delay caused by the grant of the motion, finding "[t]his delay, not caused by . . . plaintiff in any fashion, is prejudice itself." The trial court concluded "the equities of judicial economy in having the entire matter litigated at the same time weighed against the prejudice to . . . plaintiff which is delay and having even more experts added to this already complicated case" warranted denial of the motion. We cannot abide the court's exercise of discretion that was too deeply wed to "delay" which, in this case, was inevitable.

A-0607-20

We first note, as set forth in plaintiff's merits brief, many of the discovery extensions were requested by plaintiff. Moreover, the trial court realized when it adjourned the trial without date that the COVID-19 pandemic has caused a tremendous trial backlog; that situation is extant even though remote civil trials have slowly been implemented. The trial court has shepherded this case from inception and, without doubt, can strictly control the limited discovery that will be engendered by granting defendant's motion; the added sixty-day delay may even be reduced by the trial court for good cause. See R. 4:24-1(b).

The resulting damages plaintiff excruciatingly suffered were allegedly caused by the lack of care he received prior to the partial penectomy and related procedures. It will be up to a jury to determine if the lack of care occurred before he was admitted to the nursing home, while he was in the nursing home, after he was admitted to Inspira, or during any combination of those time periods. They are the series of transactions out of which arose the accrual of plaintiff's cause of action. See R. 4:8-1(a). "If there is common liability to plaintiff at that time—that is, common liability as a matter of fact even although, necessarily, then unadjudicated—defendant[s] cannot be deprived of [their] inchoate right by reason of plaintiff's loss thereafter of [their] own right of direct

6

action against the joint tortfeasor[s]." Markey v. Skog, 129 N.J. Super. 192, 200-01 (Law Div. 1974).

The trial court correctly opined defendants could pursue a claim for contribution against third-party defendants if and after a judgment against them is rendered. But the claims now proposed by the nursing home defendants, if litigated in this action, would present to the jury the continuum of care—or lack thereof—afforded plaintiff before, during and after his stays at SJEC. The jury would be able to determine, on an economy of proofs, the total amount of damages due plaintiff and the percentage of each party's negligence or fault, see N.J.S.A. 2A:15-5.2(a), allowing the judge to mold the judgment, see N.J.S.A. 2A:15-5.2(d). If the jury determines defendants are sixty percent or more responsible for plaintiff's damages, plaintiff may still recover the full amount from them, see N.J.S.A. 2A:15-5.3(a), but the need for a second contribution trial will be obviated because the jury will have allocated that percentage based on the actions of all purported tortfeasors, see Mejia v. Quest Diagnostics, Inc., 241 N.J. 360, 373-74 (2020).

We agree with the trial court that the long delay—almost four years after plaintiff filed the complaint—before the instant motion was filed cannot ordinarily be countenanced. But, on balance, the better exercise of discretion

A-0607-20

under the unusual circumstances occasioned by the COVID-19 pandemic would allow third-party defendants to be joined and pause proceedings for a period not exceeding sixty days.[4]  We would not normally tolerate such a delay, but the pandemic would have caused delays whether or not the motion was granted. Adding third-party defendants to the action would result in, as Judge Pressler cogently and eloquently stated, "the most orderly and logical manner in which proof of common liability can be established[.]" Markey, 129 N.J. Super. at 200; see also Bendar v. Rosen, 247 N.J. Super. 219, 237 (App. Div. 1991) ("While technically a right of contribution does not arise until a tortfeasor has paid more than his pro rata share, the entire-controversy doctrine and judicial economy militate for the claim being asserted in the underlying tort action.") (citing Tino v. Stout, 49 N.J. 289, 298 n.3 (1967)).

We do not pass on the merits of the nursing home defendants' claims against third-party defendants and leave any motion practice after the completion of discovery to the trial court.

---

[4] We note the trial court granted the nursing home defendants' motion to extend discovery, and the last DED extension ended December 19, 2020.  Discovery should have continued during that extension, reducing the need for protracted ongoing discovery.

8

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0607-20