**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2310-22

ESTATE OF VICTOR GAZA, JR.
by PURITA GAZA, the
Administratrix of the ESTATE OF
VICTOR GAZA, JR. and PURITA
GAZA, his wife, individually,

     Plaintiffs-Respondents,

v.

JOSEPH POPOVICH, M.D.,

     Defendant-Appellant,

and

ANA J. ICABALCETA, R.N., ANN
MARIE ALTOONIAN, R.N.,
KATHLEEN O'SULLIVAN, R.N.,
DAMARIS RODRIGUEZ, R.N.,
HUDSON HOSPITAL OPCO, LLC
d/b/a CAREPOINT HEALTH-CHRIST
HOSPITAL, PHOENIX HEALTH CARE,
INC., ONWARD HEALTHCARE,
PETER GOLDSMITH, M.D., JIM
NGUYEN, D.O., NILDA A. MARCELO,
R.N., and WILBUR MONTANA, D.O.,

     Defendants,

and

JOSEPH POPOVICH, M.D.,

       Defendant/Third-Party
       Plaintiff-Respondent,

v.

NILDA A. MARCELO, R.N.,
JIM NGUYEN, D.O., and
WILBUR MONTANA, D.O.,

       Third-Party Defendants.

_____

Argued January 14, 2025 – Decided October 6, 2025

Before Judges Smith, Chase, and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3285-15.

Michael J. Heron argued the cause for appellant (Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, attorneys; Michael J. Heron and Casey Acker, of counsel and on the briefs).

Mitchell J. Makowicz, Jr., argued the cause for respondents Estate of Victor Gaza, Jr., and Purita Gaza (Blume Forte Fried Zerres & Molinari, PC, attorneys; Mitchell J. Makowicz, Jr., on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

2

After a medical malpractice trial in which a jury found defendant Dr. Joseph Popovich (Popovich) liable for sixty percent of plaintiffs' damages, he moved to mold the verdict to reduce his liability consistent with Burt v. W. Jersey Health Sys., 339 N.J. Super. 296 (App. Div. 2011). The trial court denied the motion and imposed one hundred percent liability on defendant pursuant to the Comparative Negligence Act (CNA), N.J.S.A. 2A:15-5.1, to -5.8.

On appeal, Popovich contends the court erred in entering the total amount of damages against him. He argues the court was required to reduce the verdict to reflect the jury's 60/40 allocation of fault between himself and a dismissed defendant consistent with the decisions in Burt, 339 N.J. Super. at 311, and Jones v. Morey's Pier, Inc., 230 N.J. 142 (2017), along with the Joint Tortfeasors Contribution Law (JTCL), N.J.S.A. 2A:53A-1 to -5. On appeal, Popovich also contends the court erred by precluding him from introducing plaintiffs' amended complaint at trial. For the reasons explained below, we are guided by our Supreme Court's opinion in Mejia v. Quest Diagnostics, Inc., 241 N.J. 360 (2020), and we affirm.

I.

Plaintiff, Purita Gaza, in her capacity as Administratrix of the Estate of Victor Gaza, Jr., and individually, filed a medical malpractice lawsuit stemming

from surgery performed by Popovich to remove her husband Victor Gaza's gallbladder. Post-surgery, Victor Gaza developed sepsis. He died roughly three months after the surgery. Plaintiffs named Popovich and other defendants[1] alleged to have provided negligent care post-surgery in the first complaint, then amended the complaint five times to add more defendants, eventually including others involved in Victor Gaza's care.

Popovich answered the first complaint and then answered each successive amended complaint. Each time, he denied the allegations and asserted affirmative defenses in his answer. Among other things, he invoked the CNA, the JTCL, as well as claims for contribution and indemnification.

Defendant successfully sought leave to file a third-party complaint for contribution and indemnity against Nilda A. Marcelo, R.N., Jim Nguyen, D.O., and Wilbur Montana, D.O., who were involved in Victor's treatment. Popovich's

---

[1] Plaintiffs also named as defendants nurses Ana J. Icabalceta, R.N., Ann Maries Altoonian, R.N., Kathleen O'Sullivan, R.N., Damaris Rodriguez, R.N., and unidentified professionals employed by Christ Hospital and/or Carepoint Health, alleging they negligently cared for Victor between the time of his surgery and death. Plaintiffs amended the complaint to clarify the hospital defendant's name was Hudson Hospital Opco, LLC d/b/a Carepoint Health-Christ Hospital. Plaintiffs eventually amended the complaint four more times, adding the following defendants: Phoenix Health Care, Inc.; Onward Healthcare; and radiologist Peter Goldsmith, M.D. The fifth and final amended complaint added Jim Nguyen, D.O., Nilda A. Marcelo, R.N., and Wilbur Montana, D.O.

A-2310-22

complaint alleged the third-party defendants negligently and carelessly failed to exercise the degree of care and skill necessary for Victor's treatment. Plaintiffs subsequently amended their complaint for a fifth time to include the third-party defendants.

Next, the direct defendants made a series of motions to dismiss plaintiffs' complaint on statute of limitations grounds. Nguyen and Marcelo each successfully moved to dismiss the complaint, then Goldsmith and Montana were dismissed next.

The order dismissing Goldsmith also preserved the crossclaims of the remaining defendants at that juncture, including: Hudson Hospital/Opco; Damaris Rodriguez, R.N.; Ana Icabalceta, R.N.; and Popovich. Nguyen and Marcelo then moved to dismiss Popovich's third-party complaint. After argument, the court granted Marcelo's and Nguyen's motions, dismissing Popovich's third-party complaint against them. Relevant here, the court's order as to Nguyen dismissed all defendants' crossclaims for contribution and indemnification with prejudice. The order then expressly stated that "defendants' sole relief as to claims against Jim Nguyen, D.O. shall be an

5

allocation of fault pursuant to [Burt]."[2]  Finally, the court granted summary judgment in favor of Rodriguez, Icabalceta, O'Sullivan, Phoenix Health Care, Hudson Hospital/Opco, Altoonian, Onward Healthcare and against plaintiffs, leaving Popovich as the only remaining first-party defendant.

The trial commenced on November 28, 2022, and continued over fourteen non-consecutive days to December 20, 2022.  On the first day of trial, plaintiffs objected to permitting Popovich to argue to the jury that Nguyen and Goldsmith were negligent to allocate damages and potentially reduce his liability. Plaintiffs' position was that they did not believe Goldsmith or Nguyen had acted improperly, and that it was unfair to permit Popovich to argue otherwise and potentially limit plaintiffs' recovery.  Popovich argued that under the court's prior order concerning his crossclaims pursuant to Burt, he was entitled to pursue his contribution claim against dismissed defendants.  The court agreed with Popovich's position and clarified to the jury before opening statements that Goldsmith and Nguyen should be referred to as "treating doctors," not "defendants."  The jury was told that the doctors had been procedurally dismissed from the case.

---

[2]  Our review of the record did not reveal the dismissal orders for Marcelo and Montana.  In any event, those orders are not relevant to our holding.

At trial, Goldsmith and Nguyen testified during plaintiffs' case in chief, each describing the care they provided Gaza. Plaintiffs' expert witness, Dr. William Flynn, testified that his reading of the CT scan was consistent with Goldsmith's reading, and that Nguyen's care for Gaza met the requisite standard of care. One of Popovich's expert witnesses, Dr. Seth Glick, testified that Goldsmith deviated from the standard of care by misreading Gaza's CT scan. Another expert retained by Popovich, Dr. Neil Skolnik, testified that Nguyen deviated from the standard of care in his hospital treatment of Gaza.

At the close of the parties' respective cases, the court reminded the jury that Nguyen and Goldsmith had been dismissed prior to trial, and the jury was "not to speculate as to the reasons why." The court charged the jury with determining whether Popovich, Nguyen, and/or Goldsmith were negligent, and on allocation of fault amongst the parties. The record shows the verdict sheet conformed with the charge.

The jury found that: plaintiffs proved Popovich deviated from the requisite standard of care and that his negligence was a proximate cause of Victor Gaza's injuries; Popovich proved Goldsmith deviated from the standard of care and that his negligence was a proximate cause of Victor Gaza's injuries; and Popovich failed to prove that Nguyen deviated from the requisite standard

A-2310-22

of care. Allocating sixty percent of the fault to Popovich and forty percent to Goldsmith, the jury awarded plaintiffs $1.43 million for pain and suffering, including damages for loss of services and companionship, as well as funeral expenses.

Post-verdict, Popovich moved for a new trial, and the trial court denied the motion, finding no basis to upend the jury verdict. Next, Popovich moved to mold the verdict, arguing that because Goldsmith was a <u>Burt</u> defendant, he was entitled to a forty percent reduction of the total judgment, totaling $800,000. The record shows the trial court denied Popovich's motion to mold the verdict and reduce the damages award, finding that it was constrained by <u>Mejia</u> and the JTCL to reject the Burt argument for reducing Popovich's exposure. Since the jury found Popovich sixty percent at fault, Popovich was liable for the full amount under that statute and under the CNA. The court then awarded plaintiffs $1,568,897.80 against Popovich, which included the jury award, a $138,897.80 Medicaid lien, and prejudgment interest in the amount of $361,513.39.

In March 2023, Popovich moved to alter the judgment, or alternatively for a new trial based on the court's failure to follow the <u>Burt</u> decision. At argument, Popovich contended the court should return to its pre-trial position of treating Goldsmith as a <u>Burt</u> defendant. Popovich sought vacation of the court's order

finding him one hundred percent liable, instead seeking allocation of damages according to Burt. Rejecting this argument, the court found that if it were to accept Popovich's position, it would "basically vitiate[] the Joint Tortfeasor Contribution Liability Law." The court noted that under the JTCL, Popovich could pursue a contribution claim against Goldsmith.

Popovich appeals, contending the trial court committed reversible error when it failed to treat Dr. Goldberg as a Burt defendant and reduce the damage verdict against him by forty percent. Popovich also contends the court erred by precluding him from using plaintiffs' pleadings to impeach witnesses at trial.

II.

A.

Apportionment of liability among joint tortfeasors, when one or more have been dismissed with prejudice from the litigation, is a question of law. It is well-settled that we review a trial court's interpretation of the law de novo. See Mejia, 241 N.J. at 370-71 (first citing Cypress Point Condo. Ass'n, Inc. v. Adria Towers, LLC, 226 N.J. 403, 415 (2016) (holding that questions of law are subject to de novo review); and then citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law

and the legal consequences that flow from established facts are not entitled to any special deference.")).

## B.

"We defer to a trial court's evidentiary ruling absent an abuse of discretion." State v. Garcia, 245 N.J. 412, 430 (2021). "Under that deferential standard, we review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). An error brought to the trial judge's attention will only warrant reversal if it was "clearly capable of producing an unjust result." R. 2:10-2; State v. Macon, 57 N.J. 325, 337-38 (1971). Further, evidence must be "relevant" to be admissible. See N.J.R.E. 402 ("All relevant evidence is admissible, except as otherwise provided in these rules or by law."). "'Relevant evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401.

## III.

We first consider the relevant law.

"The [CNA] and [JTCL] comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm." Estate of Spill v. Markovitz, 260 N.J. 146, 156 (2025)

(alteration in original) (quoting Town of Kearny v. Brandt, 214 N.J. 76, 96 (2013)).

The JTCL, preceding the CNA by approximately twenty years, was adopted to alleviate the inequity of the common law rule where a plaintiff was free to determine which joint tortfeasors to sue, Holloway v. State, 125 N.J. 386, 400-01 (1991), and, if obtaining judgment against more than one tortfeasor, which to "charge with the burden of satisfying the judgment and, if more than one, in what proportion." Markey v. Skog, 129 N.J. Super. 192, 199 (Law Div. 1974), abrogated on other grounds by Jones, 230 N.J. at 157-58. In establishing the right of contribution, the JTCL:

> constitutes a recognition of the equitable doctrine that a "tortfeasor who satisfies the judgment is entitled to be put on the same footing with those who are equally liable for the wrong remedied by the judgment."
>
> [Markey, 129 N.J. Super. at 199 (quoting Kennedy v. Camp, 14 N.J. 390, 398 (1954)).]

The CNA clearly defines the factfinder's role in certain tort actions. In negligence and strict liability actions where "the question of liability is in dispute," the trier of fact must make the following findings:

> (1) The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence or fault, that is, the full value of the injured party's damages.

(2) The extent, in the form of a percentage, of each party's negligence or fault. The percentage of negligence or fault of each party shall be based on 100% and the total of all percentages of negligence or fault of all the parties to a suit shall be 100%.

[N.J.S.A. 2A:15-5.2(a).]

Ordinarily, a plaintiff can recover "[o]nly that percentage of the damages directly attributable to that party's negligence." N.J.S.A. 2A:15-5.3(c). If a party is found to be sixty percent or more at fault, however, the plaintiff can recover the full amount of damages from that party, N.J.S.A. 2A:15-5.3(a), who may in turn "seek contribution from the other joint tortfeasors." N.J.S.A. 2A:15-5.3(e). See also Krzykalski v. Tindall, 232 N.J. 525, 534-35 (2018).

A contribution claim by a joint tortfeasor is "common liability at the time of the accrual of plaintiff's cause of action which is the Sine qua non of defendant's contribution right." Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 72 (2004) (quoting Markey, 129 N.J. Super. at 200).

The JTCL governs a joint tortfeasor's contribution claim. Jones, 230 N.J. at 160. It defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J.S.A. 2A:53A-1. The law's plain language states that any joint tortfeasor who pays a "judgment in whole or

in part" is "entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share." N.J.S.A. 2A:53A-3.

The two statutes operate in tandem to ensure liability for damages is "apportioned to joint tortfeasors in conformity to the factfinder's allocation of fault," Jones, 230 N.J. at 160, in promotion of the principle that "each person only pay for injuries he or she proximately caused." Id. at 159 (quoting Fernandes v. DAR Dev. Corp., 222 N.J. 390, 407 (2015)); Holloway, 125 N.J. at 400-01.

Our courts have analyzed the interplay between the CNA and the JTCL in multi-party tort litigation in recent years. Burt, Jones, and Mejia all figure prominently in that analysis. We focus on the Court's most recent decision, Mejia.

In Mejia, the Court considered "whether a third-party defendant, facing only claims for contribution and common-law indemnification from an original defendant that did not file an affidavit of merit against him, must participate in the trial establishing the underlying liability." 241 N.J. at 364-65. There, the plaintiff filed a medical malpractice complaint against Quest Diagnostics and two of its employees based on his late wife's untimely diagnosis of cervical cancer. Id. at 365. The Quest defendants filed a third-party complaint for

contribution and indemnification against three doctors, one of whom was Dr. Jacinto Fernandez. Ibid. The plaintiff then filed suit against one of the three doctors, but not against Fernandez. Ibid. Prior to trial, Fernandez moved for an order declaring his status to that of the defendants in Jones, 230 N.J. at 142, and Burt, 339 N.J. Super. at 296. Ibid. Fernandez argued that, like the dismissed defendant in Burt, he should be dismissed from the case because no party ever served an affidavit of merit on him.[3] Ibid. The trial court denied the motion, finding the Burt and Jones defendants "'were dismissed meritoriously' and that '[t]here is no basis for dismissal of movant here.'" Id. at 366. The trial court next granted the Quest defendants' unopposed motion seeking a declaration that they had no obligation to serve an affidavit of merit on Fernandez. We affirmed. Ibid.

In affirming, the Court stated:

> [I]t is undisputed that the Quest defendants properly filed a third-party complaint against Fernandez, seeking contribution and indemnification. Pursuant to that claim for contribution, Fernandez is an active party in the litigation as a joint tortfeasor, regardless of plaintiff's decision not to file an affirmative claim against Fernandez. See Holloway, 125 N.J. at 402.

---

[3] The Court noted that in Jones and Burt, the defendants had been dismissed from the case and thus did not participate in trial, but the jury was instructed to allocate damages to them if it found them negligent. Ibid.

A-2310-22

Therefore, a trial is necessary for the trier of fact to determine the allocation of percentage of negligence to each defendant.

While plaintiff cannot recover from Fernandez directly, see Sattelberger v. Telep, 14 N.J. 353, 363 (1954), we agree with the Appellate Division that if the trier of fact determines defendants Quest or Santos to be sixty percent or more at fault, then plaintiff can recover the full amount of damages from that party, N.J.S.A. 2A:15-5.3(a), and if Fernandez is found to be between one and forty percent at fault, then he would be liable for his percentage of fault in contribution to the party that paid the full amount of damages to plaintiff, N.J.S.A. 2A:15-5.3(e). If Fernandez is determined by the trier of fact to be sixty percent or more at fault, then plaintiff's recovery will be limited to the remaining percentages of fault allocated to defendants Quest and Santos. And if Fernandez is determined to be 100% at fault, plaintiff recovers nothing.

[Id. at 374 (citations reformatted).]

The Court categorically rejected Fernandez's argument that Jones and Burt barred a valid contribution claim. Quickly dismissing Jones[4], the Court next found Burt inapplicable, stating,

[i]n Burt, the Appellate Division stressed that the Affidavit of Merit Act, "by its very terms, applies to plaintiffs, not cross-claimants," 339 N.J. Super. at 305, and ruled that the cross-claimant defendant could

---

[4] The Court rapidly dismissed Jones as applicable to the medical malpractice joint tortfeasor model, stating "[i]n Jones, the relevant defendant was a public entity dismissed pursuant to a statutory time bar not applicable here." Quest, 241 N.J. at 375 (citations omitted).

A-2310-22

pursue its claim for contribution against the dismissed defendant "without having to comply with affidavit-of-merit requirements," Pressler & Verniero, Current N.J. Court Rules, cmt. 2.3 on R. 4:7-5 (2020).

[Id. at 376 (citations reformatted).]

The Court stressed that "where a defendant subject to the [a]ffidavit of [m]erit statute asserts a third-party claim in the nature of contribution or joint tortfeasor liability as against another professional also subject to the statute, no [a]ffidavit of [m]erit is required." Ibid. (alteration in original) (quoting Diocese of Metuchen v. Prisco & Edwards, AIA, 374 N.J. Super. 409, 418 (App. Div. 2005)). Thus, the Quest defendants were not required to serve an affidavit of merit on Fernandez, who remained a third-party defendant in the case. His forty percent liability exposure was to Quest Diagnostics on its contribution claim, since the plaintiff never filed a complaint against him.

We turn to the claim before us. The record shows that Popovich timely answered plaintiffs' complaint, and it further shows that he answered every amended complaint filed by plaintiffs. The record also shows that each answer by Popovich pled third party claims for contribution against various other providers. When plaintiffs successfully moved to amend their complaint to directly add the various third-party defendants identified by Popovich, those newly added direct defendants in turn moved for dismissal with prejudice

against plaintiffs on statute of limitations grounds. Ultimately, the direct defendants' dismissals based on the statute of limitations do not adversely affect Popovich's right to contribution, which derives solely from the JTCL. Quest, 241 N.J. 360, 372-73. Using the Quest Court's approach, we can analogize the impact of the statute of limitations on plaintiffs' direct claim here to the impact of the Affidavit of Merit Act on the plaintiff's direct claim in Burt. Like the Supreme Court in Quest, we conclude there is none. On these facts, where Popovich's answers timely placed the third-party defendants, including Ngyuen and Goldsmith, on notice of the potential claims against them, they suffered no prejudice in preparing their defenses. Like the Quest defendants, Popovich's statutory right of contribution is not constrained or limited by the viability of plaintiffs' direct claims. It follows that the trial court's order was proper, and we find no error in the court's interpretation of the law and its application of the facts to it.

We turn to Popovich's argument that the court erred in precluding him from showing Goldsmith and Nguyen a copy of plaintiffs' fifth amended complaint on cross-examination to establish that plaintiffs had alleged their negligence prior to trial. He draws support from Glassman v. Friedel, 249 N.J. 199, 209, 231 (2021), where the Court permitted successive tortfeasor

defendants to present to the jury the claims the plaintiff had alleged against the defendants who had settled prior to trial on the ground that the plaintiff could not take a position at trial that was contrary to his prior position. Considering our well-settled standard of review, we disagree.

Whether plaintiffs alleged negligence against either doctor bears no relevance to whether Popovich, Nguyen, or Goldsmith had acted negligently and proximately caused Victor's injuries. It follows that we cannot conclude the court erred in precluding Popovich from asking either doctor whether plaintiffs' fifth amended complaint alleged their negligence. Additionally, Popovich's reliance on <u>Glassman</u> is misplaced where its procedural posture is different than what we confront here. <u>Glassman</u> involved a plaintiff's allegation that multiple and successive tortfeasors caused her injury and a trial with only non-settling direct defendants.

We discern no abuse of discretion by the trial court in barring Popovich from cross-examining Nguyen and Goldsmith on the allegations in plaintiffs' fifth amended complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2310-22